# REPUBLIC OF HAWAII *v.* WILLIAM P. HICKEY.

### EXCEPTIONS FROM CIRCUIT COURT, FIRST CIRCUIT.

### SUBMITTED DECEMBER 20, 1897.    DECIDED FEBRUARY 9, 1898.

### JUDD, C.J., FREAR AND WHITING, JJ.

Manslaughter.

The change of venue is in the sound discretion of the court, and, if such discretion be not abused, its exercise is not ground for arresting judgment.

There being evidence to support the verdict, a motion for new trial refused.

### OPINION OF THE COURT BY WHITING, J.

Defendant with one Andrew Chalmers was indicted, in the Fourth Circuit Court, for the crime of manslaughter in the first degree; venue was changed to the First Circuit Court. Defendant Hickey was convicted of manslaughter in the second degree, and Chalmers was acquitted.

At the July Term of the Fourth Circuit Court, the prosecution moved for a change of venue to the August Term of the First Circuit Court, upon the ground that a fair and impartial

trial could not be had before the Fourth Circuit Court which motion was supported by affidavits, and was granted by the court.

The affidavit of W. O. Smith, Attorney-General, in substance sets forth: that the defendants were overseers on the Hakalau Sugar Plantation, in Hilo, Hawaii, and the person whose death is alleged to have been caused by defendants, was a Chinese laborer on the plantation under the immediate control and direction of defendants, and the injuries which it is alleged caused his death are alleged to have been inflicted by the defendants in the sugar cane field where defendant and other fellow laborers were at work under defendants: that from the nature of the case and the circumstances which surround it, and the excitement which it has caused, and from the fact that should the said cause be tried in said Fourth Circuit, the jury would be of necessity composed largely of persons either engaged in or interested in the management and carrying on of sugar plantations, it is believed that a fair and impartial trial cannot be had in said Circuit: that application has been made for a change of venue by Mr. Goo Kim Fui and Mr. Wong Kwai, Chinese Commercial Agents, to the Minister of Foreign Affairs, requesting the trial to be had in Honolulu, for the reason that the intense feeling existing in that vicinity will not conduce to a fair and impartial trial in the Fourth Circuit. (Copies of these letters are attached.)

The affidavit of Lorrin Andrews, Sheriff of Hawaii, sets forth, that if a trial be had in the Fourth Circuit, it would be unlikely, if not impossible, that a jury can be obtained of persons who are not interested as sugar planters, or their employees, in the result of the said cause, and who have not formed or expressed opinions upon the merits or demerits of the cause, and that a full and impartial trial cannot be had there.

In the motion for change of venue, verified by oath, the Attorney-General states, that a trial in the First Circuit Court will in no way prejudice defendants or either of them: that he, the Attorney-General, W. O. Smith, has made a careful and

thorough investigation of the facts and of the evidence in the case, and has personally visited and examined the place where said crime is alleged to have been committed, and has otherwise personally and carefully prepared said cause for trial on behalf of the government and that such investigation, examination and knowledge of said premises are necessary and essential to a proper trial of said cause on behalf of the government; that public business renders it indispensible for him, said Attorney-General, to remain in Honolulu, during the above named term of court.

The defendant Hickey makes affidavit that he cannot have a fair and impartial trial in the First or in the Second Circuit Courts because of the bias and prejudice of the citizens in those circuits against him; that he alleges and believes that there is not intense feeling existing in this matter in the Fourth Circuit; and that a fair and impartial trial can be had in said Fourth Circuit, but if venue be changed, then that it should not be to either the First or Second Circuits. Andrew Chalmers makes affidavit to the same effect.

The court, against the objection of defendants, granted the motion for a change of venue to the August Term of the First Circuit Court to be held in Honolulu. The court stated, "it is undoubtedly reasonable that these cases, as they arise, should be tried in the circuits in which they arise; but there are peculiar circumstances in the Third and Fourth Circuits of this Island; there is almost an impossibility of getting a panel of jurors to try cases such as this is, without (even though unintentionally on the part of the jurors) there being biased in favor of the plantation luna or manager against whom the case ·may be brought. There is at present a great scarcity of jurors on this Island for such cases. The court does not feel that equal justice can be meted out were it to refuse to grant the motion as asked for.

The venue was changed accordingly and the trial had in Honolulu at the August Term of the First Circuit Court.

After conviction defendant Hickey moved in arrest of judgment on the ground that the court had no jurisdiction, that the

case was properly triable in the Fourth Circuit Court, and the venue was changed to the First Circuit Court without sufficient reasons in law assigned therefor.

At the trial in the First Circuit Court the defendant made no motion for a change of venue and made no claim in that court that a fair and impartial trial could not be given him in that court.

We are of opinion that the motion in arrest of judgment was properly overruled, as the change of venue was a matter in the sound discretion of the court and there was no abuse of this discretion.

In *Prov. Gov't v. Mossman*, 9 Haw. 360, the Court says, "Under the statute, the Act of 1876, to regulate the Practice and Procedure in criminal cases, Section 13, page 341 Comp. Laws, Circuit Courts are authorized in their discretion to order that the place of trial of any criminal case pending before the court be changed to some other circuit. The Judiciary Act, Laws of 1892, p. 105, provides that the discretion may be exercised upon satisfactory proof that a fair and impartial trial cannot be had  *  *  *  *  and after parties shall have had opportunity to be heard.  *  *  *  *  . This is a matter in the discretion of the Circuit Court and the only question to be decided is, did the court abuse its discretion."

The defendant moved for a new trial on the ground that the verdict was contrary to the law and the evidence, and the refusal of the court to give certain instructions asked by defendant. There were twenty-two instructions requested by defendand and most of them were refused by the court, to which defendant excepted, but he has now abandoned them except the twentieth which is as follows: "Your personal opinion as to facts not proven cannot properly be considered as the basis of your verdict. You may believe as men, that certain facts exist; but as jurors you can only act upon evidence introduced upon the trial, and from that, and that alone, you must form your verdict, unaided, unassisted and uninfluenced by any opinions or presumptions not formed upon the testimony."

The court charged the jury:

"Gentlemen of the jury the defendants on trial before you are charged with manslaughter in the first degree by killing one Lee Man Chit at Honohina, District of Hilo, Island of Hawaii, on the 31st day of May, 1897.

"Manslaughter is defined by the laws of this country to be the killing of a human being without malice aforethought and without authority, justification or extenuation by law.

"There is no evidence of the defense of authority, justification or extenuation by law in this case. The issues are, were the acts committed as alleged by the defendants or either of them and did such acts cause the death of Lee Man Chit.

"I charge you that the unlawful killing of a human being without malice and without intent to kill, but committed in the performance of an act unlawful in itself, such for instance as assault and battery, is manslaughter.

"I also charge you that every material fact necessary to constitute the offense must be proved beyond a reasonable doubt by the prosecution.

"It is necessary for the prosecution to establish beyond, a reasonable doubt that an assault was committed by the defendants or either of them as alleged in the charge.

"In order to establish manslaughter it is also necessary for the prosecution to establish beyond reasonable doubt that death was caused by an act of the defendants or one of them, and in considering the cause of death I charge you that the act or acts must be directly and immediately connected with the death, and that the person would not have died when he did had the act not been committed.

"Every person charged with crime is presumed innocent until proven guilty beyond a reasonable doubt. There must be in the jury's mind an abiding conviction amounting to a moral certainty of the guilt of the accused. If after considering all the evidence you can say you have an abiding conviction of the

guilt of the accused or either of them, you are satisfied beyond a reasonable doubt.

"Under the indictment in this case the jury may convict either or both of the defendants of the offense of manslaughter in the first degree, manslaughter in the second degree, manslaughter in the third degree or of the offense of assault and battery as the proofs may warrant.

"The jury are the judges of the facts. It is for you to consider the credibility of the witnesses that have been presented before you and of the weight to be attached to their testimony.

"The responsibility is on you to judge of the facts in issue in this case. The courts of this country are prohibited from commenting on the testimony when addressing the jury.

"There is no evidence tending to show any act by the deceased person justifying an assault and battery or other violent act upon his person either upon the part of either of these defendants or any other person.

"I also instruct you that if the jury shall be satisfied from the evidence and beyond a reasonable doubt that the defendant Hickey did any violent act to the deceased which resulted in his death even although such result was unintended, they will find that defendant guilty.

"The law raises no presumption against the prisoners but every presumption of the law is in favor of their innocence and in order to convict them of the crime alleged in the indictment, or of any lesser crime included in it; every material fact necessary to constitute such crime must be proved beyond a reasonable doubt, and if the jury entertain any reasonable doubt upon any single fact or element necessary to constitute the crime, it is your duty to give the prisoners the benefit of such doubt and acquit them.

"In criminal cases even where the evidence is so strong as to demonstrate the possibility of the guilt of the party accused, still if it fails to establish beyond a reasonable doubt the guilt of the defendants in the manner or form as charged by the

indictment then it is the duty of the jury to acquit the defendants.

"If a reasonable doubt exists in your mind as to whether the deceased died of wounds inflicted by the defendants then the defendants are entitled to the benefit of such doubt and you should render a verdict of not guilty."

The defendant took no exception to the charge as given by the court. It substantially covers the request for instruction number twenty of the defendant; and we fail to see in what way defendant was injured by the refusal of the court to give it specifically. It does not appear that defendant pointed out to the trial court the necessity of this request in this case.

We fail to see that the defendant was prejudiced by its refusal. The charge given was full and fair, and covered the points of the case which called for instruction.

The testimony for the prosecution shows that the deceased was working in the cane fields; about 8-9 o'clock a. m. Defendant Hickey struck deceased in the back with the flat side of a cane knife, then took him by the neck pressed him to the ground and kicked him and then pulled him up again and gave him a strong shove—grabbed him by the throat, threw him down and kicked him on the side of the body. The deceased lay on the ground till afternoon; water was attempted to be poured down his throat, but ran out the sides of the mouth.

Later the head luna Chalmers came and pushed and kicked and struck deceased with a whip. At end of work deceased was taken from the field by Chinese to the camp: he could not speak, and then he was taken to the house of the manager. Later the Chinese took deceased to Hilo and he died on the way.

The autopsy showed. Mark on face; blood stained face; inner part of lips excoriated. Eight marks on larynx on the neck. An abrasion on the outside and finger marks, nail marks. The articulations of the larynx were loosened. The larynx was loosened by something strong coming in contact with it as though it might have been pressed and there had been used strong

violence or force. Discoloration of body on the back. "I opened the larynx and there was subcutaneous extravasation of the blood, just over the larynx. The pectoral cavity was opened and lungs and heart examined. The lungs were congested; the heart was filled with dark flowing blood. The lungs and heart were not diseased. No organic disease. Opened the cranium; there was extravasation of blood two inches long and three quarters of an inch wide just over the place corresponding to the middle part of the coronal suture; the brain was generally congested: the injury was the result of external violence. Cause of death was the concussion of the brain caused by external violence associated with the disturbance of the functions of the heart and lungs." The testimony of the physician who made the autopsy was given at great length.

The alleged assault by Chalmers is directly contradicted by the witnesses for the defense. Hickey denies the abuse of the deceased and gives his version of what happened; admitted the striking with flat of cane knife and that he shook deceased; he took deceased by the shirt at the neck and shook him and denies the other acts charged. Evidence was given to support his story.

There was evidence for the defense tending to show that the death did not result from any acts of Hickey, nor from strangulation or suffocation, and supported by expert medical testimony of surgeons who, however, were only questioned as to strangulation and the time that death would ensue, but were not questioned as to the concussion of the brain shown by the autopsy. We have examined the evidence carefully and are of opinion that it was a case for the jury and there being evidence sufficient to support the verdict, we cannot set it aside.

Exceptions are overruled.

*W. O. Smith, Attorney-General,* for prosecution.

*P. Neumann* and *W. S. Wise* for defendant.