# TERRITORY OF HAWAII *v.* ENOCH JOHNSON AND JONAH KUMALAE.

EXCEPTIONS FROM CIRCUIT COURT, FIRST CIRCUIT.

ARGUED APRIL 17, 1905. DECIDED MAY 27, 1905.

FREAR, C.J., HARTWELL AND WILDER, JJ.

CIRCUIT COURT, FIRST CIRCUIT—*may be presided over by one judge.*

The provision of Act 32, Sec. 7, Laws of 1903, that there may be one or more sessions of the circuit court of the first circuit at the same time and that each session may be held by one of the judges, is not in conflict with the Organic Act.

ERROR HARMLESS—*in striking motions to quash indictment and challenges to grand jury, when same grounds covered by plea in abatement.*

If any error was committed in striking defendants' motions to quash the indictment and challenges to the grand jury from the

files, it was harmless for the reason that the grounds upon which they were based were afterwards made the subject of a plea in abatement, which was considered on its merits.

IDEM SONANS—*Winfred and Winnifred.*

When Winfred H. Babbitt appeared and served as a grand juror in response to a summons to Winnifred H. Babbitt, the variance was not fatal, as the names are within the rule of idem sonans.

INDICTMENT—*indorsed at foot instead of on back.*

The finding "a true bill" signed by the foreman of the grand jury, although at the foot instead of on the back of the indictment, is an "indorsement" within the meaning of rule 17 relating to grand juries.

CONSPIRACY—*not merged in completed offense, when latter of lower grade.*

A conspiracy to commit a criminal offense of lower grade than the conspiracy is not merged in such offense when completed.

ID.—*indictment for, when not duplicitous, though also sets forth commission of offense which was object of conspiracy.*

Although two independent offenses cannot be charged as such in the same count, it is usual and proper to set forth in an indictment for conspiracy the acts done in pursuance of the conspiracy, and it is immaterial that such acts constitute an offense, provided they are charged merely by way of aggravation or otherwise as done in pursuance of the conspiracy, and not as an independent offense.

SPEEDY TRIAL—*not denied by continuance from last week of term to next term.*

The constitutional provision for a speedy trial was not violated by a refusal to proceed at once with the trial and a continuance to the next term, when the request to proceed was made on Monday of the last week of the term, the day on which the plea of not guilty was made, and the next term began the following Monday.

PLEA OF NOT GUILTY, WITHDRAWAL OF—*for purpose of filing plea in abatement, discretionary.*

A plea of not guilty waives objections to grand jurors, and a refusal of leave to withdraw such plea for the purpose of filing a plea in abatement based on the ground that one of the grand jurors was disqualified is within the discretion of the trial court, not subject to reversal except in case of abuse.

SEPARATE TRIALS—*discretionary with trial court.*

Conspirators jointly indicted are not entitled to separate trials of right, and a refusal to allow them to be tried separately is

within the discretion of the trial court, not subject to reversal except in case of abuse.

EXCEPTIONS RE JURY LIST—*not considered, when record insufficient.*

An exception to the overruling of a motion to quash a special venire of trial jurors based on irregularities alleged to have been made at previous terms affecting the list of names in the trial jury box, cannot be considered when the records alleged to show such irregularities are not brought to this court.

JURORS NOT DISQUALIFIED—*though having opinion requiring evidence to remove.*

A juror is not necessarily disqualified because he has an opinion which it would require evidence to remove. The question is whether he could decide fairly and impartially on the law and the evidence in the case, and that is a question largely in the sound discretion of the trial judge.

EVIDENCE, HARMLESS ERROR—*document first admitted in evidence and then excluded.*

A document having been admitted against one objection and then excluded upon another objection being presented, the error, if any, in admitting it is held to have been cured.

EVIDENCE, CONSPIRACY—*warrant paid after conspiracy.*

A warrant paid two days after the alleged conspiracy which had for its object the obtaining of the money so paid is admissible on a charge of the conspiracy.

ID.—*journal not only evidence of speeches in legislature.*

On the trial of a member of the house of representatives for conspiracy, remarks made by him in the house may be shown by the testimony of one who heard them; the house journal is not the only evidence of what was said.

ID.—*objections not presented in trial court, not considered.*

A specific objection, which was not well founded, having been made in the trial court to the admission of certain evidence, other objections, presented for the first time in this court, will not be considered.

ID.—*various matters held admissible.*

Various matters more fully set forth in the opinion are held, without stating reasons, to have been properly admitted in evidence in this case.

REMARK BY COURT—*as to testimony at former trial.*

A remark by the court in response to an objection by the defense that certain testimony had not been given at a former trial, that he thought that certain other somewhat similar testimony

referred to in an amended question put by the prosecution had
been given at the former trial, is held not to have been reversible
error, especially when, upon further objection that the question
was not proper cross-examination, the question was disallowed.

EXCEPTIONS TO INSTRUCTIONS—*too general.*

An exception to the portion of the charge given by the court of
its own motion or to the portion given at the request of the prose-
cution, when each such portion is made up of a number of distinct
instructions which are not objected to as a whole, is too general
to be considered.

EVIDENCE, CONSPIRACY—*acts in pursuance of conspiracy, admissible on
question of intent.*

The commission of a gross cheat in pursuance of a conspiracy
may be shown in support of the charge of conspiracy, as bearing
on the question of intent.

INSTRUCTIONS, CONSPIRACY—*various instructions held properly refused.*

Various instructions requested by the defense and more fully set
out in the opinion are held, without stating reasons, to have been
properly refused.

ID.—*as to weight of evidence of acts done in pursuance of conspiracy.*

It is not error to refuse to instruct the jury that they should be
especially careful to avoid being unduly influenced by proof of a
gross cheat into the belief that a conspiracy to commit gross cheat
had been proved, especially when the jury had been instructed that
the defendants were charged with conspiracy alone and not gross
cheat.

ID.—*inapplicable.*

Instructions which are inapplicable to the evidence, even though
theoretically correct, may properly be refused.

ID.—*inadvertent error, held cured by other instructions.*

An error which was evidently made inadvertently in one instruc-
tion purporting to give the prosecution the benefit of a reasonable
doubt, is held cured by other clear and correct instructions on the
subject of reasonable doubt.

OPINION OF THE COURT BY FREAR, C.J.

The defendants were jointly indicted for conspiracy in sub-
stance as follows: That Kumalae, a member of the house of
representatives and chairman of a special committee on the
"Chinese Fund," and Johnson, an attorney, conspired to defraud

the Territory by falsely representing to the standing committee on accounts that Johnson had been engaged as clerk of said special committee and had performed certain services for it and rendered a legal opinion to it and that by reason thereof there was due him from the Territory $312.50, and that through false representations so made they procured an approval of the bill and a warrant for the payment thereof and afterwards obtained payment thereof from the Territory. The defendants were found guilty of conspiracy in the first degree and now bring the case here on twenty-five exceptions.

The first point presented by counsel, which is presented at considerable length, is that the trial court was irregularly constituted in that it was presided over by only one of the three judges of the circuit court of the first circuit instead of by all three judges sitting together as required, according to the defendants' contention, by sections 81 and 83 of the Organic Act of the Territory, which may be considered as in the nature of constitutional provisions. This point does not seem to have been raised in the trial court or made the ground of exception. Even if it had been raised and properly brought here it could not be sustained, for it is expressly provided by Act 32, section 7, Laws of 1903, that there may be one or more sessions of the court at the same time, and that each session may be held by one of the judges. This provision is not in conflict with the Organic Act as we understand it.

The first exception was taken to an order to strike from the files the defendants' separate motions to quash the indictment and their joint challenge to the panel of the grand jury and also their amended joint challenge to the grand jury. This order was based, as we infer, upon the reason that the grounds of these motions and challenges were not proper subjects for such motions and challenges but were proper subjects for a plea in abatement. Whether this was so or not as to all of the grounds set forth it is unnecessary to say, for if there was any error in striking the motions and challenges from the files it was harmless for the reason that such grounds were afterwards made the

subject of a plea in abatement, which was considered upon its merits and to the overruling of which the next exception was taken, which will now be considered.

The second exception was taken to the overruling of the defendants' joint plea in abatement, which was based on a number of grounds, only two of which are now relied on by the defendants. One of these is that *Winfred* H. Babbitt served as a member of the grand jury which found the indictment, whereas no such name, but the name *Winnifred* H. Babbitt, was certified by the jury commissioners, written on a slip of paper, placed in the jury box, drawn from the jury box, placed in the grand jury box, drawn from the grand jury box and listed among those to be served and summoned as grand jurors. Assuming that these facts sufficiently appear in the record and that the variance in the names, if material, could be taken advantage of notwithstanding the provision of section 1795 of the Revised Laws that no person shall take advantage of any irregularity in the drawing, summoning, returning or empanelling of grand or trial jurors "unless it clearly appears that he was injured by such irregularity," we are of the opinion that the names in question are similar enough to fall within the rule of idem sonans. The surnames and middle initials are identical and the Christian names are of the same derivation and for the most part spelled the same way and so similar in pronunciation as to be readily understood the one for the other. They are more nearly alike in spelling and sound than many names that have been held to be within this rule in other cases. See the numerous instances given in the note to 21 Am. & Eng. Enc. of Law, 2nd Ed. 313.

The other ground of the plea in abatement is that the statement "a true bill" and the signature of the foreman of the grand jury thereto at the foot of the indictment is not an "indorsement" within the meaning of Rule 17 of the supreme court relating to grand jurors, the contention being that the word "indorsement" means, as shown by etymology and usage, an entry "on the back." It seems to us that the statement and signature in question are an indorsement within the meaning of

the rule. *Williams v. State,* 9 Mo. 270; *State v. Jones,* 2 Kan. App. 1 (42 Pac. 392).

Exception three was taken to the overruling of the defendant's demurrer to the indictment based upon the grounds (1) that the indictment was duplicitous in that it charged two separate offenses, namely, conspiracy to commit gross cheat and gross cheat itself and (2) that it failed to state any offense known to the law.

The indictment, which is somewhat lengthy, sets forth the conspiracy and then after the words "in execution and pursuance of the said combination, mutual undertaking and concerting together" the acts which were the object of the conspiracy and concludes "and so in manner and form aforesaid at the time and place aforesaid, the said Enoch Johnson and Jonah Kumalae did unlawfully, feloniously, maliciously and fraudulently combine and mutually undertake and concert together to cheat and defraud the Territory of Hawaii of the sum of three hundred and twelve dollars and fifty cents of the moneys and property of the Territory of Hawaii, and did then and there and thereby commit the crime of conspiracy in the first degree, contrary to the form of the statute in such case made and provided."

There was no merger of the conspiracy in the offense which was the object of the conspiracy. When a conspiracy is of a lower grade, as, for instance, a misdemeanor, and the overt act is an offense of a higher grade, as, for instance, a felony, there is some difference of opinion as to whether the former is merged in the latter, although the prevailing view at present seems to be that there is no merger. When a conspiracy and the overt act done in pursuance of it are offenses of the same grade, as, for instance, when they are both misdemeanors, it is settled that there is no merger. And a fortiori when, as in this case, the conspiracy is of a higher degree than the overt act which is its object it is clear that there is no merger. 4 Cyc. 643, 644; *State v. Setter,* 57 Conn. 461; *King v. Thornton,* 4 Haw. 45.

It is true, as contended by the defendants, that "a defendant

cannot be charged in one and the same count with two or more independent offenses, as such, subject to different penalties." (10 Enc. Pl. & Pr. 532; *King v. Jones,* 3 Haw. 330), but, although unnecessary, it is proper and indeed more usual in indictments for conspiracy to set forth the overt acts, if any, done in pursuance of the conspiracy, and it is immaterial whether such acts happen to constitute a criminal offense or not so long as they are set forth merely as acts done in pursuance of the conspiracy and not as independent offenses. In such case the gist of the offense alleged is the conspiracy and not the acts which were the object of the conspiracy. The acts are set forth by way of aggravation and not as matters of substance. Whether they are set forth as matters of aggravation or by way of helping out the charge of conspiracy in point of particularity or are mere surplusage on the one hand or are set forth as independent offenses on the other is a matter of construction of the indictment. The indictment in question taken as a whole shows clearly that it was intended as an indictment for conspiracy and not of gross cheat or of conspiracy and gross cheat and the trial proceeded on that theory. See *U. S. v. Gardner,* 42 Fed. 829; *U. S. v. McDonald,* 26 Fed. Cas. No. 15,670; *State v. Grant,* 86 Ia. 216; *State v. Bradley,* 48 Conn. 535; *Commonwealth v. McHale,* 97 Pa. St. 397; *Commonwealth v. Davis,* 9 Mass. 415; *People v. Arnold,* 46 Mich. 268; *Commonwealth v. Ward,* 92 Ky. 158 (17 S. W. 283); *Dealy v. U. S.* 152 U. S. 546; *King v. Thornton,* 4 Haw. 45; *King v. Asina,* 3 Haw. 474.

In support of the second ground of the demurrer it is contended that no prejudice could result to the Territory and no offense could be committed against the Territory through the presentation of a fraudulent bill to the committee of the house of representatives on accounts for the reason that both as matter of law and under the allegations of the indictment such committee had no authority to approve accounts unless they were true and correct. This argument is so entirely without merit as to need no refutation. It was the very falseness and incorrectness of the bill and its false representation as true and

correct that was prejudicial to the Territory and that made the act a criminal offense.

The fourth exception was taken to the refusal of the defendants' request to proceed with the trial and to the continuance of the case until the next term of court, which rulings were made after the defendants had pleaded to the indictment on the day on which the demurrer was overruled. That day was Monday of the last week of the term, and the next term was to begin on the following Monday. These rulings did not amount to a denial of a speedy trial within the meaning of the constitutional provision.

The fifth exception was taken to the refusal to allow the defendants to withdraw their plea of not guilty and their demurrer and file a further plea in abatement based on the ground that one of the grand jurors was disqualified. It is contended that error was committed in this refusal particularly because the defendants had not been held to answer when the indictment was found and so had no opportunity to interpose challenges to grand jurors before the indictment was found, and because the alleged disqualification was not discovered until after the plea of not guilty. The request to withdraw the plea and demurrer and file a second plea in abatement was not made until nearly three months after the indictment was found. A plea of not guilty is a waiver of the right to object to the competency of grand jurors, and a refusal to allow a withdrawal of such plea for the purpose of raising such objections is at most a matter within the discretion of the trial court, not subject to reversal upon exceptions except in case of abuse, and no abuse appears in this case. See *Reed v. Commonwealth,* 98 Va. 821 (36 S. E. 400); *People v. Allen,* 43 N. Y. 28; *State v. Boyd,* 56 S. C. 384 (34 S. E. 662); *U. S. v. Gale,* 109 U. S. 65.

The sixth exception was taken to the refusal to grant the defendants separate trials, the principal contention under this exception being that the defendants were entitled to separate trials as matter of right under section 3096 of the Revised Laws, which reads as follows: "Conspirators may be tried joint-

ly or severally. But to prevent oppression by joining parties, and thus depriving some of the testimony of others, it is provided that in the trial of any one for a conspiracy, another, charged as a co-conspirator, may be a witness, and in such case the two may be separately tried, though joined in the indictment." The motions for separate trials were made not only after the pleas of not guilty but after the first trial, on which the jury disagreed, and not until the day upon which the case had been set for second trial, nor were they supported by affidavits. They were based upon the statute and upon the representation that it was the purpose of each defendant to call the other as a witness in his behalf. It does not appear that either did call the other as a witness or that either was deprived of the testimony of the other. One of them took the stand—apparently as a witness in his own behalf. The question whether or not defendants, who are jointly indicted, should be tried together or separately is a question resting in the sound discretion of the court and the ruling of the trial court upon it cannot be disturbed except in case of abuse. *Territory v. Masagi,* ante, 205; *U. S. v. Ball,* 163 U. S. 662. The statute does not alter the rule, nor is the word "may" in the statute to be construed as "must," as contended by the defendants. There was no abuse of discretion in refusing the motions for separate trials in this instance.

The seventh exception was taken to the overruling of the defendants' motion to quash the special venire of trial jurors on the ground that the fifty names which had been drawn from the jury box and deposited in the trial jury box for the term, and from which the twenty-six names included in the special venire were drawn, had been illegally drawn and deposited for the reason that certain of said names had not been inclosed in an envelope and under seal in accordance with the provisions of section 1780 of the Revised Laws, although the persons bearing such names had attended and served either as grand or trial jurors during the September, 1903, term or the January, 1904, term or had been excused from further service at one of said terms,—the term at which the special venire was issued

being the April, 1904, term. The contention contra is that the jurors for each term in any one year should be drawn from the entire list for that year and that section 1780 does not provide that the names of those who served or were excused during one term should not be drawn at any subsequent term in the same year, and that probably that section was intended especially for circuits in which the terms of court are short and in which one term does not begin immediately after another, as in the first circuit, and that its object was to require the names of persons who had served or been excused to be sealed only until the time for drawing the venire for the next term or to prevent the drawing of such jurors on special venire during the same term; also that there could be no question as to those who had served during the September, 1903, term, as the statute provides for an entire new list each year. Whatever may be the object of section 1780 or the effect of a failure to comply with its provisions, it is impossible for us to say whether those provisions were complied with or not for the reason that sufficient of the record to enable us to pass upon that question has not been brought here on these exceptions.

Exceptions eight and nine were taken to the overruling of defendants' challenges to two of the trial jurors for cause. One of these jurors testified on his voir dire that he had sat in a case against a different defendant in the United States District Court, in which he had seen, when looking through different vouchers, one of the defendants' bills and had remarked at the time that he thought it was "pretty raw," that his opinion would probably unconsciously influence him, that he did not think he would start out with an unbiased mind, that he thought he had formed a slight impression and that it would take evidence to remove it, but also said that he could and would decide the case according to the law and the evidence and that alone and would be governed by that and give a fair and impartial verdict and lay aside all impressions that he had and decide entirely on the evidence in this case, and that although it would take evidence to remove his impressions he would still want the

prosecution to prove that the charge was true and could not convict the defendants until they had been proven guilty beyond a reasonable doubt, and that, although these outside matters might probably unconsciously affect him, he would aim to be a fair and impartial juror and give a true and impartial verdict according to the law and the evidence.

The other juror testified that he had read the newspapers and heard discussions in regard to this case, although he couldn't say that he had taken part in those discussions, that he had heard opinions expressed both ways but could not recollect having expressed any opinion himself, although he thought he had one which it would take evidence to remove and that it would have some influence even though slight in his conclusion in this case, but that he would disregard all these matters referred to and decide the case solely upon the law and the evidence here in court.

It is not sufficient to disqualify a juror that he has formed an opinion which it would take evidence to remove. The question is rather whether he could give the defendant a fair and impartial trial upon the law and the evidence in the particular case, and in determining this question much must be left to the sound discretion of the trial judge who is in a much better position than the appellate court to ascertain from the manner and answers of the juror whether he could give a fair and impartial verdict. We cannot say that the trial judge erred in overruling the challenges in question. See *Gallot v. U. S.,* 87 Fed. 446, and cases there cited; also *State v. Brady,* 100 Ia. 191, and *Wise v. Tong Ong,* ante 461. We may add that it does not appear that the defendants' peremptory challenges were exhausted.

The tenth exception was taken to the admission in evidence of the voucher chiefly relied on in this case, after the chairman of the committee on accounts of the house of representatives had testified that the voucher had come to him as representing part of the expenses of the house and that he had signed it in his official capacity as chairman of the committee but that he

did not remember just who presented it to him. Its admission
was objected to on the ground that it did not tend to prove any
of the allegations of the indictment. After its admission it was
further objected that the signatures to it other than that of
the witness had not been proved, whereupon the court ruled that
it was necessary to establish the instrument before its admis-
sion, and the prosecution then presented it simply to be marked
for identification until the other signatures should be proved.
The instrument must be regarded as having been withdrawn
and therefore even if its prior admission had been erroneous
the error was cured.

The eleventh exception is abandoned.

The twelfth exception was taken to the admission in evidence
of the warrant that was issued on the voucher just referred to,
the registrar of public accounts having first testified that it was
a treasury warrant signed by the clerk of the house of repre-
sentatives and paid to the defendant Johnson on April 27,
1903, two days after the alleged conspiracy. The objection
to the introduction of this warrant was that it was irrelevant,
immaterial and incompetent because it did not tend to prove a
conspiracy that occurred two days before. If, as shown above,
it was proper to allege in the indictment the acts done in pur-
suance of the conspiracy it was proper to show those acts in
evidence.

The thirteenth exception was taken to the admission of proof
by the oral testimony of a member of the house of representa-
tives of what was said in the house of representatives by the
defendant Kumalae upon the presentation to the house of the
report of the committee on the "Chinese Fund." The objec-
tion presented in the court below was that the journal of the
house was the only evidence of what occurred there. This
objection was properly overruled. Other objections presented
now in this court cannot be considered.

The fourteenth exception was taken to the allowance of a
question put to the representative just referred to as to whether
he ever knew that the defendant Johnson claimed that he drew

the report of the committee on the "Chinese Fund." The objection offered to this was that it was irrelevant as not tending to prove conspiracy. The exception is overruled.

The fifteenth, sixteenth and seventeenth exceptions were taken to the refusal to allow, on cross-examination of the same witness, questions as to whether he knew what practice prevailed among the committees of the house with reference to the appointment of clerks, as to whose function or prerogative it was to appoint the clerk of a committee, and whether he knew if there were other committees that had clerks besides the committee in question, and as to what the practice was of members of committees engaging clerical services without consulting the other members. Various objections were offered to these questions. These exceptions also are overruled.

The eighteenth exception is similar in character to the thirteenth, and is disposed of in the same way. The witness in this instance was the house stenographer.

The nineteenth and twentieth exceptions relate to questions put apparently for the purpose of showing that most of the work of the committee on the "Chinese Fund" was performed by a subcommittee consisting of two members other than the defendant Kumalae and without the defendant Johnson assisting as clerk. The first of these exceptions was to the allowance of a question as to who, if any one, acted as clerk of the subcommittee, this question being put to one who appeared before the subcommittee as a witness. The question was allowed on the undertaking of the prosecution to prove later that the subcommittee was specially delegated to do this work. The other of these exceptions was taken to the allowance of testimony by a member of the subcommittee as to the authorization of the subcommittee to do this work by the defendant Kumalae, who was chairman of the committee. The objection to these questions was that the subcommittee could not constitute the whole committee, and that the chairman of the committee did not have authority to appoint the subcommittee to do the work. These exceptions are overruled.

The twenty-first exception was taken to the introduction of the report of the subcommittee above referred to, after one of its members had testified that the report had been prepared by him from testimony taken by him and the other member, that one of the signatures of the report was his, and that he had presented the report to the house of representatives at the request of the chairman of the committee, the defendant Kumalae, although he had also testified, when asked if he knew Kumalae's signature when he saw it, that he would not like to swear that he knew it. The objection offered was that there were at least two supposed signatures to the report, including that of the defendant Kumalae, which had not been proven. This exception also is overruled.

The twenty-second exception relates to a remark made by the court as to what testimony had been given by the defendant Johnson at the previous trial of the case. The defendant Kumalae had been asked on cross-examination whether he had heard Johnson's testimony at the former trial that as a rule he didn't take more than five minutes a day for his work. Defendants' counsel then submitted that no such testimony was given at the former trial, in reply to which the attorney general said that it may have been five minutes or ten minutes, may have been an hour, whereupon the court said, "I think he stated something to that effect." Defendants' counsel then noted an exception to any statement by the court or counsel as to what was testified to by Johnson on the previous trial. Upon the question being put again as amended it was further objected that this was not proper cross-examination, which objection was sustained. In our opinion no reversible error occurred.

The twenty-third exception was taken to the portion of the charge to the jury given by the court of its own motion, to the portion given at the request of the prosecution, to the refusal to give defendants' requested instructions 1, 7, 10, 11, 12, 13, 14, 15, 20 and 21 and to the modification of defendants' requested instructions 3 and 19. If this should be regarded as one exception, it is too general to be considered by this court.

In so far as it relates to the portions of the charge given by the court of its own motion and at the request of the prosecution, it certainly is too general to be considered by this court, inasmuch as those portions were made up of a number of distinct instructions and the contention is not that they were erroneous as a whole but that only certain portions of them were erroneous. We will treat the exception to the refusal to give certain specified instructions requested by the defendant and to the modifications of other specified instructions as intended to be a separate exception as to each of such instructions.

The point involved in the first requested instruction was raised by exception 3, taken to the overruling of the demurrer, and is disposed of by the ruling upon that exception.

The third requested instruction, which was to the effect that the fact, if it was a fact, that the defendant Johnson cheated the Territory did not constitute the crime of conspiracy, was modified by the addition of the words, "though you may consider this fact, if it be a fact, in reaching a verdict." The modification was proper, as the fact, if it was a fact, that the Territory was cheated was pertinent upon the question of intent. *State v. Noyes,* 25 Vt. 416.

The seventh requested instruction was to the effect that unless the jury should be convinced beyond a reasonable doubt that the defendant Johnson rendered or caused to be rendered no such services as were mentioned in the voucher they could not find the items of said voucher to be wholly false and baseless. There was no error in refusing this instruction.

The tenth requested instruction was to the effect that the prosecution had resorted to evidence tending to prove the offense of gross cheat in order to prove the offense of conspiracy and insisted that because the Territory was cheated the defendants must be guilty of conspiracy also. That instruction was not conformable to the truth.

The eleventh and twelfth requested instructions were expressions as to the policy of indicting parties for the completed offense rather than for the conspiracy in cases where the object

of the conspiracy was the commission of a criminal offense and was carried out. The requests to give these instructions also were properly refused.

The thirteenth requested instruction was to the effect that the jury should be especially careful to avoid being led away by evidence tending to prove the offense of gross cheat and being thereby unduly influenced into the belief that because a fraud may have been perpetrated the defendant should be convicted of a conspiracy to commit such fraud. It was not error to refuse to give such advice to the jury as to the weight to be given to the evidence of the commission of the offense of gross cheat which was the object of the conspiracy. Other instructions that were given pointed out the distinction between the two offenses and called the jury's attention to the fact that the defendants were charged with conspiracy alone and not with gross cheat.

The fourteenth requested instruction may be disposed of in the same manner as the thirteenth.

The fifteenth requested instruction was to the effect that any representations made by either of the defendants to the chairman of the committee on accounts could not be regarded as representations made to the committee itself. It is contended that, although there was no evidence that either of the defendants had made any representations to the chairman of the committee with reference to the bill in question, the requested instruction should have been given because, as the defense contends, the attorney general had argued that the defendants had influenced the chairman into believing that the bill was correct. The prosecution contends that the evidence showed that the false representations consisted in presenting a false and fraudulent bill for services which were therein fraudulently represented to have been performed, and that the bill, when handed to the chairman, was by him submitted to the entire committee and that the committee audited it. We find no error in refusing the request to give this instruction.

The nineteenth requested instruction was to the effect that neither the court nor the jury could sit in revision upon the

legitimate acts of the legislature and that if the jury believed that the defendant Johnson was in fact engaged by the defendant Kumalae to perform the services in question and did in fact render some such services the jury could not consider whether the compensation allowed and paid for such services was or was not reasonable. This was modified by the addition of the words, "if you further believe from the evidence beyond a reasonable doubt the charge of conspiracy has not been proven," thus purporting to give the prosecution instead of the defendants the benefit of a reasonable doubt. It is conceded that the modification was made to read this way through inadvertence. It was nevertheless error, but in view of the prior and subsequent clear and correct instructions on the question of reasonable doubt it was not harmful error.

The twentieth requested instruction was to the effect that the legislature was supreme within its own domain and not subject to have its legal acts questioned by any other department, that it was within the domain of the house of representatives, acting through its committee, to engage and pay for the services of the defendant Johnson as mentioned in the voucher, and that unless the jury should believe beyond a reasonable doubt that Johnson entirely failed to perform such services in some one or more of the items contained in the voucher the defendants should be acquitted. This requested instruction was objectionable for the reason that it assumed as proved that Johnson was engaged and paid through the committee for the services mentioned in the voucher and also because it charged that the defendants should be acquitted unless Johnson entirely failed to perform the services mentioned in one or more of the items contained in the voucher. The first part of the instruction, whether appropriate or not, was covered by the preceding instruction which was given.

The twenty-first requested instruction was to the effect that the report of the committee on accounts to the house of representatives, dated April 28, 1903, was not evidence of the auditing and approval of the voucher by the committee because it

was not made until after the payment of the warrant issued upon the voucher. There was no error in refusing the request to give this instruction.

The twenty-fourth and twenty-fifth exceptions, which were taken to the verdict as contrary to the law and the evidence and to the overruling of the defendants' motion for a new trial, raise only questions that have already been disposed of under other exceptions.

The exceptions are overruled.

*L. Andrews,* Attorney General, and *W. S. Fleming,* Assistant Attorney General, for the prosecution.

*C. W. Ashford* and *A. S. Humphreys* for defendants.