## STATE OF HAWAII *v.* DAVID K. HASHIMOTO, GEORGE M. TANISUE, FLORENDO GUILLERMO, LEO BAJO, AURELIO BARRO, ALFRED L. CANIANES AND HENRY A. ALEJANDRO.

No. 4180.

NOVEMBER 28, 1962.

TSUKIYAMA, C.J., CASSIDY, WIRTZ, LEWIS AND MIZUHA, JJ.

OPINION OF THE COURT BY TSUKIYAMA, C.J.

Defendants, David K. Hashimoto, George M. Tanisue, Florendo Guillermo, Leo Bajo, Aurelio Barro, Alfred L. Canianes and Henry A. Alejandro, were indicted for and convicted by a jury in the First Circuit Court of the crime of robbery in the second degree.

The evidence in this case shows that, pursuing a preconceived plan to "roll" someone, defendants one evening proceeded to Ala Moana Park in Honolulu in search of a prey. There, they came upon one Gene Smith and a girl companion. Without provocation, defendants launched an attack upon Smith, pommeling, kicking, and violently manhandling him, and robbed him of his belongings which, among other things, included a wrist watch and a wallet containing a few dollars.

Defendants, upon writ of error, have presented to this court for review several issues of law. All defendants, by their respective counsel, have joined in presenting arguments upon and urging the validity of five assignments of error. The remaining assignments are neither specified nor argued orally or in the brief and are therefore deemed

abandoned. *Akana* v. *Territory,* 22 Haw. 479; *In Re Josephine Silva,* 32 Haw. 855.

Assignment No. 2 relates to two errors allegedly committed by the trial court at the outset of the trial, namely, (1) denial of defendants' written motion for a change of venue, and (2) denial of defendants' written motion for severance.

After defendants had been arraigned and their respective pleas of not guilty entered, they filed separate written motions for change of venue and severance. All the motions set forth identical reasons in selfsame language, namely: for change of venue, "that recent radio, television and newspaper publicity regarding the offense alleged as having been committed by these defendants have created an atmosphere of bias and prejudice, against the accused so as to make a fair and impartial trial in this area impossible"; and for severance, "that facts and circumstances indicate that their defense would be separate and distinct from those of * * * other defendants, so that it would be manifestly unjust to force them to stand trial with the other defendants, contrary to the 14th Amendment of the United States Constitution."

The foregoing motions were not supported by affidavits. Defendants state in their opening brief that "The trial judge (Circuit Court) consolidated the foregoing motions for hearing on August 25, 1959 and summarily denied the motions without a full hearing given the Defendants." An examination of the record shows that on August 26, 1959, the trial court entered separate written orders denying the motions. Other than said orders, nary a thing appears in the record as to what actually occurred at the alleged hearing on August 25, 1959.

The above-quoted statement of defendants in their brief is not self-probative. Without proof in the record, this court is unable to determine to what extent there

was or was not a full hearing. Absent such proof, it is incumbent upon the court to indulge the reasonable presumption in favor of the legality and regularity of judicial proceedings. As stated in 20 Am. Jur., *Evidence,* § 168, p. 172, "* * * it is presumed, in the absence of evidence to the contrary, that a court of general jurisdiction has proceeded within the general scope of its powers and that its orders and judgments have been rendered with authority." See *Estate of Lee Chuck,* 33 Haw. 445; 2 Ency. Pl. & Pr. 420; 22A C.J.S., *Criminal Law,* § 589(1), p. 352.

In reviewing a trial court's decision, the appellate court proceeds on the assumption that it is free from error. The burden is upon the party asserting error to make it manifest by the record. "Where the record is silent, it will be presumed that what ought to have been done was not only done, but was rightly done; * * *." 3 Am. Jur., *Appeal and Error,* § 923, p. 489.

In any event, the matter of determining whether local prejudice is so pronounced as to warrant a change of venue to secure a fair and impartial trial for the accused in a criminal proceeding rests in the sound discretion of the trial court. *Hawaii v. Hickey,* 11 Haw. 314; *Territory v. Robello,* 20 Haw. 7. One of the factors generally considered material in such determination is the difficulty in securing an impartial jury. 22 C.J.S., *Criminal Law,* § 196, p. 517. In the case at bar, the record is devoid of any indication that such difficulty existed; a fortiori, defendants had not even exhausted their peremptory challenges when they accepted the jury.

Similarly, when several defendants are indicted and tried collectively, as here, a motion for severance is addressed to the sound discretion of the trial court. *Rex v. Tin Ah Chin,* 3 Haw. 90; *Territory v. Johnson,* 16 Haw. 743; *Territory v. Robello, supra.* Defendants claimed in their motions that their defenses were separate and dis-

tinct from those of codefendants and therefore could not be justly tried together. It is true that courts have allowed severance upon a showing that the defenses would be antagonistic and that one defendant would adduce evidence exculpatory of himself and condemnatory of his codefendants. In the instant case, however, the record is devoid of any showing of hostility or mutual incrimination among defendants. As we have seen, each motion presented merely a general conclusion unsupported by affidavits.

There appearing in the record nothing to show that the trial court abused its discretion, it will be deemed to have ruled properly in the exercise of its sound discretion. The assignment of error is therefore without merit.

Assignment No. 4 raises the issue as to whether the trial court erred in denying defendants' motions for a mistrial. It is noted that after the jury was sworn, one of defense counsel was permitted without objection to poll the jurors as to whether any of them had read newspaper accounts or heard radio comments concerning the case during the last two days. Upon receiving an affirmative reply from a scattered few, counsel immediately moved for a mistrial without further interrogation on the ground that "there was prejudice to these defendants because of the special comment that was included in the article, comments which had nothing to do with this particular case * * *."

The alleged radio comments will not be considered. Nothing appears in the record as to what the comments were. Apropos of the newspaper accounts, two Honolulu Advertiser clippings and one Star-Bulletin clipping were introduced in evidence. They contained brief factual statements reporting the commencement of the trial and the effort being made by the prosecutor's office to locate a girl who was to be a witness in the particular case and

also a chief witness in another case in which defendants were charged with rape.

Unquestionably the trial court on its own volition should have pursued the inquiry by examining or directing the examination of the jurors respecting the newspaper accounts. See *United States* v. *Milanovich,* 303 F.2d 626 (4th Cir. 1962), cert. denied 371 U.S. 876 (1962). Such duty on the part of the court, however, did not relieve counsel of their own responsibility. *Cf., United States* v. *Shaffer,* 291 F.2d 689 at 695 (7th Cir.).

Where the accounts are published and read before selection, the burden of proving prejudice is on the party who makes the assertion. *Cf., Marshall* v. *United States,* 360 U.S. 310. An admission by a few jurors of having read a newspaper article concerning the particular case in which they are about to sit as jurors is not per se prejudicial. If such circumstance alone requires a declaration of mistrial, then it would be extremely doubtful if any trial by jury could ever be held. In the case at bar, it is not shown that the jurors who admitted reading the newspaper accounts had any discussion about them with other jurors, nor was there, on the record, the slightest attempt on the part of counsel to extend their examination of the jurors, while polling, to ascertain what effect, if any, the newspaper accounts had on them.

Defendants contend that the newspaper accounts were prejudicial in that they referred not only to the present case but also to an independent rape case in which defendants were also involved. Defendants cite *People* v. *Murawski,* 394 Ill. 236, 68 N.E.2d 272; *Sprinkle* v. *State,* 137 Miss. 731, 102 So. 844; *Golden* v. *State,* 89 Tex. Crim. 525, 232 S.W. 813. An examination of the foregoing cases reveals that they are factually distinguishable from the instant case. *Golden* and *Sprinkle, supra,* are cases in which the news articles were taken into the deliberation

room and there discussed by the jurors. In *Murawski, supra,* the news article recited three instances when the defendant had been previously indicted for other crimes, and more importantly, it was shown that the prosecutor who prosecuted the case had not only supplied the published information but actually used the prejudicial facts in his argument to the jury.

We have concluded that each case must be considered on the basis of its particular circumstances. *Kitts* v. *State,* 153 Neb. 784, 46 N.W.2d 158; *Brown* v. *State,* 83 Ga. App. 650, 64 S.E.2d 313; *State* v. *Adamo,* 128 Wash. 419, 223 Pac. 9; *People* v. *Lubin,* 190 App. Div. 339, 179 N.Y. Supp. 691; *State* v. *Crowley,* 113 Me. 568, 94 Atl. 754.

Before the jury was sworn, defense counsel had ample opportunity to determine whether any of the prospective jurors had read the articles and to inquire into the prejudicial effect thereof, if any. In the process of jury selection prejudice easily could have been avoided by eliminating affected jurors. Defendants could not remain silent, then seek to capitalize on the point by motion for mistrial after the jury was sworn. Only in the case of counsel for defendants Hashimoto and Alejandro was any claim made of ignorance of the articles during the period preceding the swearing of the jury. However, as we have noted, he made no attempt to determine whether there was any prejudice. It was not too late to have reopened the voir dire for that purpose.

Furthermore, the weight of the evidence adduced during the trial must be considered. We are satisfied from the entire record that the complaint made under this assignment does not show such prejudice as to constitute reversible error.

Assignment No. 4 must be overruled.

Next, under Assignment No. 5, defendants claim that their motions for a mistrial should have been granted on

the ground that about eight of the jurors admitted, in the course of the poll above-mentioned, having seen defendants handcuffed. The transcript of evidence shows that one of defense counsel asked the jury whether any of them did "since yesterday when we started, see any of the defendants handcuffed in this courtroom or close to the courtroom or in the vicinity of the courtroom?" When there was a showing of hands, said counsel simply counted aloud one to eight, and then immediately addressed the court: "And on the basis of that showing of hands, your Honor, we make a motion now for a mistrial on the ground it is prejudice to the defendants." Other defendants joined. The motion, however, was denied.

Incidentally, it is to be noted that with reference to this particular assignment of error, defendants set forth therein and urge in their argument a second ground in support of their motion, namely, that "the defendants were required to sit together with uniformed armed guards between some of them * * *." Nowhere in the entire record of the proceedings in the court below is there any reference to uniformed armed guards. Accordingly, such ground has no standing here. The general rule is too well recognized that an appellate court will not consider a claimed error based upon a ground to which the trial court's attention was not called. Facts which do not appear from the evidence cannot be supplied by presenting the same for the first time in the appellate court. *State* v. *Chavez,* 19 N.M. 325, 142 Pac. 922; 3 Am. Jur., *Appeal and Error,* § 697, p. 290. See *Holstein* v. *Benedict,* 22 Haw. 441.

As to the ground urged anent the admission by eight of the jurors that they had seen defendants handcuffed, the record indicates that the polling took place shortly after the jury had been sworn. It is obvious that while the jury was being selected, defendants were in the court-

room unmanacled since only eight jurors raised their hands. Moreover, significant is the fact that defendants did not ask leave to poll the jurors until the jury had been sworn. When the trial court inquired as to why the matter was not taken up at the chambers conference which was held immediately prior thereto, counsel replied: "* * * I felt that it would require that the jury be sworn in first. It is simply strategy * * *." Counsel had ample opportunity to examine the jurors on the particular subject on the voir dire. This they designedly did not do.

In *State* v. *Brooks,* 44 Haw. 82 at 84, 352 P.2d 611 at 613, this court said: "* * * that the accused, in the sound discretion of the trial court, may be brought into a courtroom manacled and that there is no reversible error in the absence of a showing that the court clearly abused its discretion or that the defendant was actually prejudiced before the jury." That some jurors admitted seeing the handcuffed defendants does not, *ipso facto,* raise a presumption of prejudice. Defendants in this case, as we have shown, merely asked for a raising of hands and did not pursue the inquiry to ascertain what effect the observation had on the particular jurors. It is reasonable to assume that a jury panel, particularly when found acceptable to the parties, as it was the case here, is composed of men and women of average intelligence and circumspection as to their sworn duty as jurors to examine, in consonance with the court's instructions on the governing law, the evidence presented and render a fair, unbiased and impartial verdict. It is a far-fetched conjecture that jurors under oath would spontaneously harbor prejudice immediately upon seeing a defendant brought to court in manacles.

The point is well put in *State* v. *Pepoon,* 62 Wash. 635 at 644, 114 Pac. 449 at 453: "In addition, we must indulge some presumptions in favor of the integrity of

the jury. It is a branch of the judiciary, and if we assume that jurors are so quickly forgetful of the duties of citizenship as to stand continually ready to violate their oath on the slightest provocation, we must inevitably conclude that a trial by jury is a farce and our government a failure."

It is the view of this court that the assignment of error is without merit.

We now come to Assignment No. 11. Detective Barrett was on the witness stand testifying for the prosecution on matters pertaining to the circumstances surrounding the taking of each defendant's statement after the arrest. While the witness was being questioned by the prosecution as to the voluntariness of the statement allegedly made to him by defendant Hashimoto, upon request of defendants for a voir dire examination the trial court excused the jury. Counsel for codefendants Guillermo and Barro then asked for a ruling by the trial court as to whether he would be permitted on the voir dire to cross-examine Detective Barrett in behalf of his clients on the voluntariness of Hashimoto's alleged statement and those of all other codefendants; whether he would be allowed to see those alleged statements in the course of the voir dire to determine voluntariness; and whether he would be allowed to cross-examine other codefendants with reference to the voluntariness of their respective statements. To the trial court's adverse ruling, all defendants joined in excepting.

Defendants' claim of error cannot be supported by the authorities. Generally, the scope of a voir dire examination to ascertain the voluntariness of confessions rests within the sound judicial discretion of the trial court. 20 Am. Jur., *Evidence*, § 534, p. 455; 23 C.J.S., *Criminal Law*, § 836, p. 253. Defendants contend that there was an abuse of discretion when they were denied the right

to cross-examine not only Detective Barrett as to the voluntariness of codefendant Hashimoto's alleged statement but also the codefendants, who testified on the voir dire, as to the voluntariness of their respective statements. We fail to discern any such abuse. The sole purpose of the voir dire was to ascertain whether Hashimoto's statement or those of his codefendants were made voluntarily so that a determination could be made as to their admissibility as evidence.

The contention that the trial court erred in refusing to permit defendants to see the statements allegedly made to Detective Barrett is without merit. There is nothing shown in the record to make inapplicable the general rule that the contents of such statements are not material to the question of voluntariness. *People* v. *Fisher,* 340 Ill. 216, 172 N.E. 743; *Ah Fook Chang* v. *United States,* 91 F.2d 805 (9th Cir.); *Silliman* v. *People,* 114 Colo. 130, 162 P.2d 793.

Whether the statement made by each defendant was given voluntarily or not was a matter which concerned only the particular defendant who gave his statement. The right of cross-examination as safeguarded by law was accorded defendants on the voir dire in that every defendant who gave a statement was allowed and availed himself of the opportunity to cross-examine Detective Barrett as to the voluntariness of his own statement. The statement of each was admissible against him alone. *Territory* v. *Kitabayashi,* 41 Haw. 428. Obviously, defendants were pursuing an inapplicable theory. The case of *State* v. *Wells,* 35 Utah 400, 100 Pac. 681, upon which defendants rely, is not in point. There, a single defendant was involved, while here, there are seven. That case clearly is not authority for the proposition that each one of several codefendants should be allowed to cross-examine a state's witness when the testimony of the witness relates to the

voluntariness of statements given by other codefendants.

In the final analysis, after the preliminary voir dire examination was concluded, every defendant was accorded full opportunity to cross-examine Barrett in the presence of the jury, and nothing transpired to show that any threat, inducement, or other irregular method was applied to secure a statement from each. Under the circumstances, defendants suffered no prejudice. *People* v. *Miller,* 135 Cal. 69, 67 Pac. 12.

Assignment No. 11 is not sustained.

The final claim of error is made by defendants under Assignment No. 20. After the completion of prosecution's case, Gene Smith, victim of the robbery, was called as a witness by counsel for defendants Hashimoto and Alejandro. Replying to a question put by said counsel as to how many times the witness saw defendants after the date of the alleged incident, Smith replied: "Probably just * * * the only time that I can remember seeing them, I saw them at a lineup in the detective building and then at the preliminary hearing of the rape." Counsel for Guillermo and Barro immediately moved "on the basis of the answer of the witness" for a mistrial. The motion was denied.

The gravamen of defendants' assignment of error is that "a mistrial should have been declared since Mr. Smith's reference to the rape charges was improper in that it admitted evidence of a separate and independent crime which was prejudicial to the defendants." Defendants rely on the well-recognized and accepted rule that evidence of a separate and independent crime is inadmissible to prove the guilt of a defendant on trial for a particular criminal offense. We agree that such rule is firmly established in this jurisdiction. *Territory* v. *Caminos,* 38 Haw. 628. Although there are some equally well-established exceptions and limitations to this general rule, as

defendants themselves acknowledge in their argument, we are not concerned with them here for they are not in issue.

The voluntary answer of Gene Smith above-quoted was strictly not responsive to the specific question propounded by counsel, although from the witness's standpoint it was responsive as a natural sequence of his answer as to how many times he saw defendants. In any event, the voluntary portion was immaterial and incompetent. Significantly, although Smith was called as a witness by one of defense counsel who elicited the voluntary answer from the witness, said counsel failed to move to strike it as unresponsive nor did a single defendant move that it be stricken as inadmissible. Nevertheless, in denying defendants' motion for a mistrial, the trial court should have, *sua sponte,* instructed the jury to disregard Smith's voluntary remark.

When an unresponsive or improper answer is given to a proper question, the remedy is a motion to strike. Absent such motion, the answer will generally not be considered when urged on appeal as prejudicial. 58 Am. Jur., *Witness,* § 576, p. 322. In *Cochrane* v. *State,* 125 Tex. Cr. R. 119, 67 S.W.2d 313, an analogous case, it was held that a voluntary reference to another crime by a witness was not a ground for reversal in the absence of a motion to strike. See also *Steffani* v. *State,* 45 Ariz. 210, 42 P.2d 615; *Huff* v. *State,* 145 Tex. Cr. R. 82, 165 S.W.2d 717.

Thus, in the instant case there should have been a motion to strike with a request to advise the jury to disregard. There are in this case no such circumstances as were present in *State* v. *Chang,* 46 Haw. 22, 374 P.2d 5. However, we do not rest on that basis. Assuming for present purposes that the point has been preserved for review, nevertheless upon careful examination and consideration of the entire record, we are of the opinion

that the court's failure to so instruct the jury to disregard the testimony does not warrant a reversal of the judgment. In determining to what extent an error of this nature is fatal, we cannot ignore the evidence in the case. The jury could not reasonably have returned a verdict other than the one it did, even if the alleged error had not been committed. Neither the denial of the motion for a mistrial nor the failure of the trial court to instruct the jury to disregard was therefore prejudicial to defendants.

It is the view of this court, on the basis of the overwhelming evidence, that the alleged errors claimed under Assignments Nos. 4 and 20 could not have resulted in such prejudice to defendants as to constitute reversible error. *Territory* v. *Awana,* 28 Haw. 546; *State* v. *Hale,* 45 Haw. 269, 367 P.2d 81.

Consequently, the assignment must be overruled.

Judgment affirmed.

*Robert Kimura* for defendants, plaintiffs in error, David K. Hashimoto, Henry A. Alejandro and George M. Tanisue.

*Robert H. K. Chang* for defendant, plaintiff in error, Alfred L. Canianes.

*David K. Namaka* for defendant, plaintiff in error, Leo Bajo.

*Nathaniel Felzer* for defendants, plaintiffs in error, Florendo Guillermo and Aurelio Barro.

*Daniel G. Ridley* for all defendants-plaintiffs in error.

*George I. Hieda,* Deputy Prosecuting Attorney, City and County of Honolulu *(John H. Peters,* Prosecuting Attorney), for plaintiff, defendant in error.