# TERRITORY OF HAWAII *v.* JOHN RICHARDSON.

### EXCEPTIONS FROM CIRCUIT COURT, SECOND CIRCUIT.

ARGUED DECEMBER 4.                    DECIDED DECEMBER 6.

### OPINION FILED DECEMBER 12, 1905.

### FREAR, C.J., HARTWELL AND WILDER, JJ.

EMBEZZLEMENT—*instructions appropriate to defense of accounting to one assuming to be the owner's agent—wrong instructions, effect upon of right instructions—comment upon frivolous exceptions.*

> Instructions which might be appropriate in a civil action for recovery of the money entrusted to the defendant are not appropriate in a charge of embezzling money. The effect upon a jury of wrong instructions is not removed by giving right instructions upon the same subject, the jury not being instructed to disregard the wrong ones. The practice of taking frivolous exceptions in the trial of a case deserves censure and is condemned by the court.

### OPINION OF THE COURT BY HARTWELL, J.

The defendant was indicted, tried and convicted of the offense of embezzling $1049.66, Sept. 20, 1903, belonging to one John Tallett, being money received by the defendant on a check dated September 8, 1903, drawn by A. N. Kepoikai on Bishop & Co., payable to the order of John Tallett. The jury found defendant guilty as charged, the defendant's bill of exceptions averring that it was a verdict of "guilty of having embezzled the sum of $1049.66."

The bill of exceptions refers to matters which appear only from examination of papers filed as exhibits and which, although alleged to be so, are not incorporated in the bill.

The following exceptions were allowed: 1, to overruling the

defendant's plea in abatement based, we infer, upon a previous indictment for the same offense. The plea does not state whether the defendant had been tried upon this or whether any proceedings had been taken and therefore it is left for our inference that it had been nolle pross'd. 2 recites from the transcript several pages of an examination of a juror on his voir dire and that the defendant excepted to the disallowance of his challenge to the juror. In 3 it appears, after reading several pages of the testimony of the witness Tallett that the defendant excepted to his being asked whether, after his receipt for the check, he ever consented to the defendant using the money. 4, to the denial of defendant's motion to strike out the evidence of the witness that the way he knew that the paper, evidently meaning the check, given him by Hayselden, was money, was that he heard people say so. 5, to asking the witness if he gave his son-in-law authority to dispose of this paper money. 6, to asking the witness Kepoikai what amount of money he accounted for to Tallett and to his evidence that before sending the money, upon return of his account approved, he sent his draft on Bishop & Co., on that account. 7, 8, 9, 10 and 11, to evidence of McKenzie, agent of the Bank of Bishop & Co., testifying for the prosecution, concerning deposits made and checks drawn on the account of defendant's daughter. 12, 13 and 14, to evidence of Tallett's daughter that she had not consented to the defendant disposing of the check except by depositing the proceeds in her father's name and to not allowing her to be asked, on cross-examination, whether she had made any statement during the trial that she was "here to collect my money," or had asked the defendant to give her money on account of this transaction which she wished to pay to her husband. (This last exception is sustained.) 15, to the prosecution asking Tallett's lawyer what he did for Tallett concerning the money after being retained by Tallett's daughter. 16 to refusing to allow defendant to ask his witness, Decoto, whether his promissory note, which the witness had testified that Tetzlaf had told him that he took from the defendant for about one thousand dollars, was payable to Tetzlaf or

his wife. 17, 18, 19 and 20, to refusing to allow the defendant to place in evidence certain checks on the defendant paid by the witness in October and November, 1902, being, as defendant claimed, for account of Charles Tetzlaf, or to allow the witness to testify to the amounts deposited with him by the defendant in September and October, 1903, or to show other checks in October, drawn by the defendant, payable to his daughter, as well as in favor of Charles Tetzlaf and one in favor of Tallett. (Exception 20 is sustained.) 21, to allowing the prosecution in cross-examining the defendant to ask whether a purported copy presented to him was a true copy of a receipt by Tallett of Kepoikai's check, which receipt had been in some manner removed from the files.

The foregoing exceptions, with the exception of 14 and 20, are overruled. They are, indeed, too frivolous to deserve comment. It is unfortunate for the administration of justice that trials should be delayed and useless expense caused to the Territory by trifling exceptions. Even if attorneys, who indulge in such practice, believe that they are impressing their client or jurors, the practice deserves censure. Perhaps the trial judge hesitates to rebuke attorneys for such things lest that may jrejudice the jury against the attorney's client, but this court does not hesitate to pronounce its condemnation upon the practice. There are well established rules governing the form of questions to witnesses and the admissibility of evidence and an attorney is more likely to show his ignorance of those rules than to benefit his client by taking frequent and unmeaning exceptions to testimony.

We now proceed to serious exceptions. The defendant's case depended upon whether he had accounted for the money received by him on the Kepoikai check in favor of Tallett, its owner, by his transactions with Tallett's daughter and son-in-law, the Tetzlafs and had done so in the honest belief, based on the facts within his knowledge, that the owner had held the Tetzlafs out by his former course of dealing as authorized to represent him concerning the disposition of the proceeds of the check; and did

not depend upon whether Tallett himself had, in fact, so author-
ized them, since if the defendant, while acting under that belief,
had accounted to them for the money, whatever his liability in
an action by the owner, Tallett, it cannot be said "that he, with-
out the consent and against the will of the owner, fraudulently
converted or disposed of the same," which is essential to the
offense of embezzlement.    Sec. 2965, R. L.

The defendant, in his own testimony, claimed that Tallett's
son-in-law, Tetzlaf, coming to his office with Hayselden, who, as
attorney for Tallett, had obtained the Kepoikai check, handed
him the check and, at the same time, Hayselden's bill of $59. for
services, requesting the defendant to pay the bill and take it out
of the check, which he did; that Tallett's daughter afterwards
talked with him about disposing of the proceeds of the check by
depositing it for her youngest child, which he advised her not
to do, suggesting that it be deposited in her own name or some
other and that afterwards Tetzlaf, in the presence of his wife,
at the defendant's office, suggested that the defendant give him
his demand note as he was in charge of defendant's business and
had the privilege of taking money out of the business, and that
the daughter said that was agreeable to her and the following
morning defendant gave Tetzlaf his demand note for the money
payable to Mrs. Tetzlaf's order; that on account of that note
defendant, besides the $59 item to Hayselden, paid other sums,
including $77 paid to the deputy tax assessor for Tallett's taxes
and various sums to Tetzlaf amounting to $649.66, for which
he had Tetzlaf's receipt "on acc. of A. N. Kepoikai check No.
551 for $1049 66-100 which was placed in his hands for deposit
by my wife.  1. Bal. of $400 00-100," concerning which Tetzlaf,
August 13, 1904, wrote to the defendant: "Circumstances now
compel me to ask you for an immediate settlement of the claim
which I have against you amounting to $400.00 and the nature
of which you are fully aware, as cash obtained from my wife,"
that on receipt of the letter he saw Mrs. Tetzlaf who told him
she did not want him to pay over again the amount he had paid
for her husband but wanted him to pay her some of the $400

so as to be able to follow her husband who she expected would be going to San Francisco, defendant telling her that if she wished to go to San Francisco he would try to give her the $400 to go there; that soon afterwards the Tetzlafs placed the matter in the hands of an attorney, Coke, who was willing to take the $400 on account but not in final settlement; that the defendant was willing to pay them the same upon receiving a full receipt for the account.

As to exceptions 22, 23 and 24, to refusal to give certain instructions not shown in the bill, they cannot be considered further than the requested instruction which does appear, viz.: "If you find that John Tallett's agents, or either of them, accepted the promissory note of defendant wherein and whereby defendant promised to pay the money in question to said agents, or either of them, you must acquit the defendant," the exception to the refusal to give which is overruled.

Exception 25, to an instruction which simply embodies the statutory definition of embezzlement, and also exception 33, instructing the jury that no demand was necessary to constitute the crime of embezzlement, are overruled.

The following instructions (Exceptions 26, 27, 28, 29, 30, 31 and 32) incorrectly state the law upon the subject:

"To constitute a conversion so as to make out a case of embezzlement, the owner must be deprived of his property or money by an adverse using or holding, but the means by which this is accomplished are immaterial.

"If the jury believe from the evidence, that John Tallett did not hold out Charles Tetzlaf to the world as having authority to collect the moneys mentioned in the indictment or any part thereof, or did not knowingly permit the said Charles Tetzlaff to so act, then, any payment on account of said moneys by the defendant to the said Charles Tetzlaff is no payment to John Tallett the principal.

"One who deals with an agent is put upon inquiry as to the extent of the agent's authority, and assumes the risk of the agent having authority to bind his principal in the transaction in which they are engaged.

"In order to create an agency by representation or estoppel,

it is essential that the principal should have knowledge of the assumption by the agent of the powers he has exercised.

"In order that the principal may ratify the acts of an agent, the principal must have knowledge of all the facts pertaining to the transaction.

If "Charles Tetzlaff assumed to act on behalf of Maria Tetzlaff, and induced the defendant to pay to the said Maria Tetzlaff certain moneys on account of the moneys mentioned in the indictment and (that) the said Charles Tetzlaff made the representation that it was to be payment on account of the said moneys mentioned in the indictment, and if the jury believe from the evidence, that the said Maria Tetzlaff received the money so procured from the defendant, but that the said Maria Tetzlaff had no knowledge of the representation made by the said Charles Tetzlaff, then the jury are instructed that the said Maria Tetzlaff did not ratify the act of the said Charles Tetzlaff and the representation made by him in regard thereto.

If "the money representing the proceeds of the check of A. N. Kepoikai, to John Tallett for $1049.66, and dated September 8, 1903, was by the defendant converted to his own use and thereafter he made restoration of certain portions of the moneys so converted by him, that such act on his part is no defense."

The foregoing instructions, if applicable in a civil action for money had and received, are not appropriate to an indictment for embezzlement.

It is true that the jury were also instructed fully and correctly to the effect that they must find "that there existed in the mind of this defendant a conscious, wilful and felonious purpose to violate the law;" that "a failure to pay over the money does not raise any presumption of felonious conversion;" that if Tallett "at the date of the alleged embezzlement had lost the ownership of the property, then the jury should acquit," and that if he appointed either of the Tetzlafs as his agent in the matter of this money "without restriction as to any special use to which the money was to be put, it was within the scope of said agent's authority to loan the money to defendant and take his promissory note therefor, and if you find that said agent did loan the money to defendant you must acquit him;" also that if the Tetzlafs "were acting as the agents and had control of

John Tallett's money, their acts were binding on John Tallett, and in such case their transactions for the defendant are presumed to have taken place with good faith on his part and should entitle him to an acquittal," but the jury were not told to disregard the objectionable instructions above mentioned which, if allowed, would have required them to pay no attention to the defense, whether they believed it to be true or not, nor were the jury told that the instructions excepted to were to be regarded as modified by or taken in connection with the instructions which were afterwards given.

Accordingly, exceptions 26, 27, 28, 29, 30, 31 and 32, to giving instructions which we have held to be wrong, are sustained.

We hardly think that the sustaining of exceptions 14 or 20 would require the verdict to be set aside. It is on account of the instructions excepted to as above that we decided, by decision filed herein December 6, that the sentence should be vacated, the verdict set aside and a new trial ordered.

*M. F. Prosser, deputy attorney general,* for the Territory.

*W. A. Kinney* and *R. B. Anderson* with *Ballou & Marx* for defendant, at argument on exceptions.