Sylva v. Wailuku Sugar Co., 19 Haw. 681.

# KAANAPU SYLVA AND HANNAH JACKSON *v.* WAILUKU SUGAR CO.

## PETITION FOR REHEARING.

ARGUED DECEMBER 7, 1909.            DECIDED DECEMBER 15, 1909.

### HARTWELL, C.J., WILDER AND PERRY, JJ.

LIMITATIONS, STATUTE OF—*action to recover possession of land—entry.*
     The term "entry" used in the statute refers to the common law
     extrajudicial remedy of one who is ousted from his freehold,
     whereby to regain possession.

### OPINION OF THE COURT BY HARTWELL, C.J.

#### (Perry, J., dissenting.)

The defendant having filed a petition for rehearing of the case reargument was requested "upon the meaning and effect of Instruction 18, in view of other instructions relating to the same subject and of the ruling in *Kapiolani Est.* v. *Thurston,* 17 Haw. 324, 325; *Motes* v. *U. S.,* 178 U. S. 320 (458), and *Fid. Mut. Life Assn.* v. *Mettler,* 185 U. S. 320."

The instruction was as follows:

"No. 18. If you find from the evidence in the case that the defendant entered upon the lands in dispute as shown by the evidence or any portion of them under claim of title, or deed, that such entry was, in law, wrongful unless such entry was made within the period of ten years from the date the title or right to such land was first vested in the party making such entry, the defendant, and within ten years from the time the right to such land accrued to the predecessor or predecessors, if any, under whom such right is claimed by the defendant."

The defendant's attorney argued that there is an essential difference between harmless error in rulings upon evidence, as in cases above cited, and erroneous instructions which cannot be regarded as offset or cured by correct instructions, citing *Territory* v. *Richardson,* 17 Haw. 231, 236, in which case instructions

applicable in an action for money had and received were held not to be cured by instructions appropriate to the case, which was the trial of an indictment for embezzlement. It may be that the opinion of the majority of the court in the present case states the rule about conflicting instructions in broader language than can be reconciled with the ruling in *Territory* v. *Richardson*. But this does not dispense with the necessity of considering whether the instruction 18, above cited, may not be correct. If the term "entry" is taken in its popular meaning of going upon one's land, an instruction that one's entry upon his land, when not dispossessed, more than ten years after he acquired it, is wrongful, would be not only preposterous, but, as stated in the dissenting opinion, equivalent to an instruction to find in this case for the plaintiffs; but if instruction 18 may properly be taken to mean that defendant's entry would be wrongful, made for the first time ten years or more after the right to make it first accrued, and if this would be a correct statement of the law, there would be no occasion to consider the effect of other instructions.

But at common law entry was the extrajudicial remedy for the wrong done by ousting the owner of the freehold, whether by abatement, intrusion or disseizin and applies only in cases "when another person who hath no right hath previously taken possession of lands or tenements." 3 Blackstone's Com., 168, 174. If the ouster is effected by discontinuance or deforcement "the owner of the estate cannot enter but is driven to his action." Ib. 175. The remedy by entry, however, must be pursued "in a peaceable and easy manner and not with force or strong hand." Ib. 179. If this could not be done the remedy to obtain possession was by writ of entry. Our statute of limitations, ch. 127 R. L., part 2, entitled "Real Actions," was taken mainly from the Massachusetts statute, ch. 196 Pub. Stat., which is based upon the statute 3 & 4 Will. IV. c. 27. This is evident by comparing the English statute, found in the

appendix of Angell on Limitations, 6 ed., with the Massachusetts and Hawaiian enactments. It is evident that the term "entry" is used in our own statute as well as in the others mentioned in its common law meaning.

Sec. 1988 R. L., then, in requiring that no person shall make an entry upon any land unless within ten years after the right to bring an action to recover possession of it first accrued, means that the entry must be made within the time named and not after and implies that the person entitled to possession was ousted by the disseizor or otherwise, for if in possession he would have no occasion to "recover" it. By Sec. 1990 R. L. "In the construction of this chapter the right to make an entry *or* commence an action shall be deemed to have first accrued at the times respectively hereinafter mentioned," including the time "when any person shall be disseized," and "in the cases not otherwise specially provided for, the right" (to make an entry or commence an action) "shall be deemed to have accrued when the claimant or the person under whom he claims has become entitled to the possession of the premises under the title upon which the entry or action is founded."

The instruction, therefore, means in substance and legal effect that the first entry by a dispossessed owner of land must be made within ten years after he was ousted when his right accrued to bring an action to recover its possession.

If it be said that the jury would have taken the popular meaning of "entry upon land" and that the legal meaning ought to have been defined by the court the answer is that failure to do this, when not requested by the defendant, is not error.

In the expression in the instruction "within the period of ten years from the date the title or right to such land was first vested," the word "or" may be regarded not as an alternative but as equivalent to "meaning." A right to land does not necessarily imply ownership. It "is generally treated as the right to property not in possession, as distinguished from jus in re, which

implies the absolute dominion." 2 Bouvier's Law Dict. 73. "And this, indeed, is the accurate expression for every case of that species of jus in personam which is styled jus ad rem. In every case of the kind, the party entitled has jus in personam ad jus in rem acquirendam. That is to say, he has a right, availing against a determinate person, to the acquisition of a right availing against the world at large. And, by consequence, his right is a right to an act of conveyance or transfer on the part of the person obliged." 2 Austin, Jur. 42.

No other meaning than that which is above outlined can properly be given to the instruction in accordance with the statute upon which it is based, and it does not appear that any other was placed upon it at the trial. If the plaintiffs' attorney had thought that the jury could suppose it meant that the defendant could not lawfully have gone upon its own land while in possession of another, unless within ten years after it acquired it, he would not have failed to urge this view upon them, in which case, if it can be supposed, he would promptly have been checked by the court. On the other hand, if the defendant's attorney had supposed this to be a possible meaning of the instruction he would wisely have rested the case upon an exception to it. It is difficult to believe that any jury would draw this meaning from the instruction or that the court intended that they should find that one could not rightfully go on his own land, while held by another, ten years after he got it. It is to be regretted that juries are instructed on the law so elaborately that even the appellate court may find it difficult to understand the instructions. But to set aside a verdict because the instruction is susceptible of a meaning not intended by the trial court and not adopted at the trial by counsel on either side would not tend to promote the administration of justice.

Few verdicts could stand if the law essays often read to the jury as instructions were required to be so worded that the jury would understand their legal meaning.

Sylva v. Wailuku Sugar Co., 19 Haw. 681.

Upon consideration of the argument made upon the partial rehearing which was granted we see no reason to modify our former opinion, argument upon the petition for rehearing the rest of the case being denied under the rule.

*S. M. Ballou* for the petitioner.

*R. P. Quarles* contra.

### CONCURRING OPINION OF WILDER, J.

While agreeing with the reasoning of the opinion of the chief justice, I concur in its conclusion on the additional ground that the evidence requires a finding that plaintiffs are the owners of the land in dispute by adverse possession. The testimony on behalf of plaintiffs showed that in 1875, after Cornwell deeded to Kaauwai and built the Cornwell fence, the grantee actually lived on the land in dispute in the same house that the original awardee lived in, it not appearing for how long, that the land mauka of the Cornwell fence was substantially fenced in, that Kaauwai cultivated the land in dispute, that plaintiffs and their predecessors after Kaauwai always lived in this substantial enclosure, although not on the land in dispute, that off and on from the building of the Cornwell fence plaintiffs and their predecessors cultivated the land in dispute, that plaintiffs always paid the taxes on the land, that Cornwell Jr., one of the defendant's predecessors, endeavored to buy out the interest of one of the plaintiffs, that plaintiffs and their predecessors always claimed title to the land, that defendant in 1898 leased for ten years the interest of one of the plaintiffs and paid its lessor's taxes thereon, that some of the members of plaintiffs' families were buried on the land in dispute, and that from 1875 to 1908 neither the defendant nor any of its predecessors ever claimed the land or went on it under a claim of title. On behalf of defendant the testimony tended to show that after Kaauwai's death, which occurred in 1884, plaintiffs and their predecessors never cultivated the land in dispute, and that after the death of Kaauwai it was vacant and unoccupied.

The most that can be said of defendant's evidence is that it constituted a mere scintilla, which under the ruling in *Smith v. Hamakua Mill Co.,* 14 Haw. 669, is insufficient to support a verdict.

### DISSENTING OPINION OF PERRY, J.

Even in the light of the common law discussion contained in the above opinion I am unable to construe the instruction as it is there construed.

Unless words and phrases capable of both a technical and an ordinary signification are specially defined by a judge who is instructing a jury as to the law of the case, the language used by the judge will be given by the jury its ordinary every day meaning, the only meaning which it is familiar with. All of the jurors who sat in this case were, it may be safely said, wholly ignorant of the history of writs of right and writs of entry and of any technical meaning at the common law of the word "entry" and of the words "title to land" and "right to land." Listening to the statement of the law contained in the instruction, in all probability for the first time in their lives, they would, I believe, naturally understand it then, as I understand it now, to be a direction that the defendant's going upon the land was wrongful if it took place within ten years from the time when the defendant or its predecessors acquired title to the land. In the instruction itself the judge showed in the use of the words "as shown by the evidence" that the entry he was talking about was the act of going upon the land which the evidence adduced tended to show had been done by the defendant. This also appears from plaintiffs' requested instructions 4, 7, 11, 13, 14 and defendant's No. 9, and perhaps in others, where the words "entry," "enter," "go upon," "acts of trespass" and "obtain possession" are all used as importing a going upon the land and as referring to acts of the class which the evidence tended to show had been committed by the defendant

upon the land in controversy. Likewise the construction that the words "from the date the title or right to such land was first vested" in the defendant or its predecessors meant from the date when the right to judicially recover land not in the possession of the defendant or its predecessors first accrued, or from the date when defendant was ousted, could not reasonably have occurred to men ignorant of the common law. I venture the surmise that even if the jury had been composed wholly of lawyers chosen by lot from all the attorneys of this Territory or of this city, the jurors would have taken the language of the instruction in its ordinary acceptation, and, while holding a different view as to the law, would have regarded it as a direction to find for the plaintiff if they found the facts of possession at the time by the plaintiff, a going upon the land by the defendant in spite of such possession and a lapse from the date of the deed to the defendant or its predecessors to the time of such entry of a period of more than ten years.

On the petition for rehearing plaintiffs' attorney argued in this court, in support of the instruction, that it is the law that a person who has acquired title by deed may not lawfully enter upon the land if it is at the time in the possession of another who has had possession for however short a period, less than ten years, and who has no other claim of title, unless he, the grantee, does so within ten years from the date of his deed, adding that thereafter the title would remain in the grantee but that the latter would have no remedy to obtain possession or to otherwise render his title effective. It is fair to infer that argument of the same nature was presented in the trial court in support of the requested instruction and that the latter was granted as meaning what in my first dissenting opinion and in this opinion it is construed to mean and that fact alone would amply excuse a failure on defendant's part to ask, even if otherwise it would have been its duty to do so, for other instructions defining the terms used. If the trial judge had not concurred

in counsel's view of the law on the point he would have express-
ed the instruction in other language. Defendant's attorney,
the record shows, excepted to the giving of the instruction. The
inference is that he opposed its granting.

If instructions are so ambiguous, confusing or misleading
that even the appellate court finds it difficult to understand them,
it cannot be said with any certainty that the jury understood
them, that the trial judge performed his duty or that both par-
ties have had a fair trial.

While concurring in the view that the evidence was sufficient
to support a finding of adverse possession by the plaintiffs and
their predecessors in interest of the land in dispute, I am of
the opinion that the evidence was not such as to necessarily re-
quire that finding and that there was sufficient evidence to sup-
port a finding against the plaintiffs on that issue. Aside from
the fact that there was evidence tending to show intimidation
on behalf of the plaintiffs of one at least of the defendant's wit-
nesses and other evidence tending to weaken the credibility of
some of plaintiffs' witnesses who testified on the subject of ad-
verse possession, there was evidence, inter alia, that the land in
dispute and the portion upon which plaintiffs' house now stands
were not fenced in as one lot and that the only fences standing
for any considerable period of time were the Cornwell fence on
the makai side and a stone wall along the road; that the parcel
in dispute has not been cultivated or used in any other manner
since Kaauwai's death, which occurred according to the evi-
dence in 1882, 1883 or 1884, but has been covered with lantana
and other noxious weeds since that time; that horses and cattle
belonging to others pastured on the lot without restraint until
the time of plaintiff Hannah's marriage about four years prior
to the trial when her husband repaired the fences; that before
defendant's entry the occupants of the adjoining Kaina kuleana
planted taro and peanuts on the land in question; and that the
holding by the plaintiffs and their predecessors was not con-
tinuous for the full period of ten years at any time prior to
defendant's entry.