TERRITORY OF HAWAII *v.* FRANK ROBELLO, FRANK PIRES, SOLOMON KEALOHA AND MA-FONG.

EXCEPTIONS FROM CIRCUIT COURT, SECOND CIRCUIT.

SUBMITTED DECEMBER 6, 1909.    DECIDED FEBRUARY 7, 1910.

CRIMINAL LAW—*counsel assisting prosecution—separate trials—change of venue.*

Unless otherwise directed by the attorney general a county attorney may consent to private counsel assisting the prosecution.

It may be proper to grant a motion for a separate trial if seasonably made by defendants having antagonistic interests.

A motion for change of venue on the ground that extensive corporate and personal interests prevent a fair and impartial trial in the circuit is properly denied, there appearing to be no abuse of discretion.

LARCENY—*evidence by recent possession untruthfully explained—verdict in part not sustained by evidence.*

Taking with felonious intent by defendants M. & K. may be inferred by recent possession untruthfully explained. There being no evidence other than hearsay of stealing by defendants R. & P. the verdict against them is not sustained.

JURY—*challenges for favor—instructions.*

Jurors in the employ of corporations controlled by the president of the ranch corporation owning the stolen property, who having friendly and even intimate relations with him desire to retain his good will, are not thereby disqualified, the judge upon their examination finding them to be "indifferent in the case." It is not error to find a juror disqualified by an opinion formed by hearing

general talk leaving an unconscious tendency to "lean to one side" and to "weigh one side a little heavier than the other," but not a fixed opinion as it would be changed if what he heard was not true and "be subject to the evidence on both sides," nor to find that a juror has sufficient knowledge of English although unable to define such words as "impartial," "bias," "prejudice," "testimony" or "obligation."

A person representing the interests of the prosecution is allowed during the trial to sit with the prosecuting officer.

Instructions need not repeat the essential ingredients of larceny whenever "taking" or "getting possession" is mentioned if they have been already defined. The explanation given of reasonable doubt is approved. Certain comment on evidence does not justify setting aside verdict.

### OPINION OF THE COURT BY HARTWELL, C. J.

The defendants were convicted of larceny in the first degree upon an indictment charging that at Kula, district of Makawao, in the Island of Maui, on March 7, 1905, they did unlawfully and feloniously steal, take and carry away certain cattle, seven in number, of the value of $100, the property of the Haleakala Ranch Co., then and there found and not derelict. The court sentenced Robello to one year at hard labor, Pires ten months, Mafong one year at the reformatory school and suspended the sentence of Kealoha. After arraignment, when the case was called, the defendants objected to further appearance of C. W. Ashford as counsel for the prosecution on the ground that no authority authorizing him to appear had been presented, and excepted to the overruling of their objection. This was a second trial, the jury having failed to agree at the former trial in which, without objection by the defendants, Ashford was counsel for the prosecution. A stipulation was made in court between him, representing the prosecution, and counsel for defendants, that retrial be set for April 14, 1909, and on April 8, that the case be set for April 13. Other cases taking precedence this case was called April 15, when the first objection to Ashford's appearance was made.

It is contended that *Territory v. Chong Chak Lai*, 19 Haw. 437, goes no further than to hold "that special counsel may assist in the prosecution of a criminal case with the consent of the attorney general;" that the county attorney, being a deputy of the attorney general, cannot delegate his power; that the ruling ought not to be extended to include a county attorney as authorized to allow counsel to assist, and that in the absence of any showing it cannot be inferred that as a deputy of the attorney general he was authorized to allow this to be done.

It might suffice to say that the objection would properly have been made before recognizing the appearance, but we prefer to consider that unless otherwise directed by the attorney general the county attorney's authority to give such consent is incidental to his statutory power to prosecute. In this case, as in that of *Chong Chak Lai,* the appearance of private counsel was on the statement of the city and county attorney that he was assisting the prosecution.

The exception cannot be sustained.

The defendants Robello and Pires excepted to the refusal to grant their motion for a separate trial from the other two defendants whose declarations concerning the larceny, placed in evidence at the former trial, implicated Robello and Pires, although made in their absence and therefore not evidence against them.

There is force in the exception. The affidavit in support of the motion shows that the interests of the codefendants were antagonistic and notwithstanding instructions to disregard such evidence human nature is such that no one can say that it would not affect the verdict. As held in *Rex v. Paakaula,* 3 Haw. 30, and *Rex v. Tin Ah Chin,* Ib. 90, there is no right to a separate trial in such cases, and to set aside a verdict on the ground that it was refused would require either a clear case of abuse of discretion or else a failure to move seasonably for a separate trial. The motion could have been made several days earlier,

before the defendants were arraigned and the case set for trial. But for this delay the showing made would have required a separate trial for Robello and Pires, but in view of our conclusion that the evidence does not sustain their conviction, we do not pass upon this exception.

Exception was taken to the refusal of the defendants' motion for change of venue supported by their affidavit that the Ranch Co. through private counsel was vigorously prosecuting the case and that H. P. Baldwin, its president, was president of a large number of other corporations upon Maui, including the Hawaiian Commercial & Sugar Co., Paia Plantation, Maui Agricultural Co., and the Haiku Plantation; that the Hawaiian Commercial & Sugar Co. owned a corporation operating railroads on Maui, the Kahului railroad, and that Baldwin was a director and officer and largely interested in the Paia, Pulehu, Kalianui, Kula, Makawao, Kailua and Kahiku plantations or sugar companies upon Maui, and through the Maui Agricultural Co., a copartnership in which seven of said corporations were partners, was largely interested in raising cattle; that he was the owner of the Honolua ranch; that upon the list of one hundred names selected as trial jurors for the year are the names of forty-one men in the employ of the various plantations, corporations or ranches in which H. P. Baldwin is interested aforesaid, and that all of them are more or less under his influence and subserve his interests, who therefore are not proper jurors in this case; that Baldwin is taking an active interest in the prosecution and that the manager of the Honolua ranch was inquiring that morning in Wailuku about the persons summoned as jurors and reported to Baldwin that they were satisfactory to said interests with the exception of one person; that owing to the former trial and discussion of it in the county the defendants cannot have a fair and impartial trial in the circuit and that their interests and defense will be greatly prejudiced by the influences of Baldwin and his numerous interests and by

the business relations between him and his said interests and the forty-one persons selected to serve on the jury; that there were in attendance as trial jurors ten persons in the employ of said corporations and other interests.

Before acting upon the motion the court called for a counter-affidavit which was filed by County Attorney Coke and Ashford that Baldwin had not consulted or conferred with, or sent messages to either of them in reference to the prosecution, nor shown to them in any way whatever an interest in it or, so far as they knew, taken any active part or participated in any manner in the preparation of evidence or recommendation of or objection to jurors and that they were not aware of any reason why the defendants could not have a fair trial by a jury to be selected within the circuit.

The motion was addressed to the sound discretion of the court. The trial judge may well have found upon the evidence that Mr. Baldwin was not concerning himself about the case and it was impossible to say that a fair trial could not be had on Maui by reason of his large corporate interests there and the employment in other corporations than the Haleakala Ranch Co. of persons likely to be called on the jury, that fact being of itself insufficient to disqualify jurors.

There being no abuse of discretion the exception is not sustained.

The exception to the verdict on the ground that it was contrary to evidence and the weight of evidence we consider in so far as it is a claim that there was no evidence. By the decisions of this court a verdict stands if supported by the evidence and not contrary to law. Seven calves, the property of the Haleakala Ranch Co., were the subject of the larceny charged. There was evidence that on March 7, 1909, the manager of the Haleakala Ranch Co. saw one of the calves in Robello's lot which adjoins the ranch and that all of the calves were there in February. March 15 the deputy sheriff searched the lot under

a warrant and found there the seven calves, all unbranded, valued at over $100, their ages ranging from four to ten months. Robello said he had bought one from Pires, making no claim to the others which he said were put there by Kealoha and Mafong for pasturage although at that time that Kealoha denied putting them there; Pires said he bought three of the calves from Kealoha and Mafong for $17 but had not paid for them, and sold one to Robello, and that the calves were put there to be pastured. The next day at the Makawao court house Robello and Pires repeated these statements and Mafong and Kealoha said they found the calves in a very poor condition upon unenclosed government land and fed them for over a year, sold three of them to Pires and put all into the Robello lot for pasturage. They afterwards made contradictory statements but there was no competent evidence that Robello or Pires stole the calves although they may have suspected that they were ranch calves and it was their duty to ascertain the fact. There was evidence that March 7, 1909, the ranch people found a cow on a portion of the ranch adjoining that on which the calves were found and that on the other side was a calf answering its calls; that they recognized the calf as belonging to the cow; that the calves were not derelict or starving in February and ranged in age from four to ten months so that they were too young to have been cared for by Mafong and Kealoha for any such length of time as they testified; that they were all in possession of the owner until the middle of February 1909, and one of them until one week prior to March 7, 1909.

The jury would have been amply justified in disbelieving entirely the explanation of their possession of the calves which was given by Mafong and Kealoha.

In *Prov. Gov't.* v. *Machado,* 9 Haw. 221, the felonious taking of coin by the defendant was inferred from her conduct when officers were searching her house for it, under which she

had hidden it afterwards hiding it behind a picture in the house and again under the steps of another house, and it was held that the larceny was shown by this conduct.    In *Republic v. Pahu,* 10 Haw. 74, a saddle was found in the defendant's possession, who falsely claimed that he bought it from another. The court said:

"The mere proof of possession of stolen property is not sufficient to constitute larceny, yet when accompanied by false explanations of its possession, a prima facie case is made and it should properly be submitted to the jury."

This case was approved in *Republic v. Kahoohanohano,* Ib. 97, in which the evidence of the felonious taking of a knife was that it was missing a few minutes after the defendant had left the table on which it had been placed and that when afterwards it was seen in his possession he said that he had taken it by mistake.  "This evidence unrebutted would justify a verdict against the defendant." It does not appear that the calves were derelict.  "It is not necessary, in respect to larceny, that it should appear whose property, other than the taker's, the thing is; it is enough that it appear that it is not the taker's, and that it does not appear to be derelict, and in case of doubt whether a thing is derelict, the presumption is that it is not so." Sec. 2955 R. L.   The calves were "the subjects of larceny, though not at the time within the actual keeping or control of the owner." Sec. 2957 R. L.   Moreover, taking of live domestic animals away from where they belong "with intent to appropriate the entire dominion over them" is not to be "presumed or supposed to have been in good faith." *People v. Kaatz,* 3 Parker's Cr. Cas. 141.

"A person does not lose the possession of his horses or cattle here because they may happen to be outside of his enclosures and he may not be able at any given time to lay his hands upon them.   They are still in his possession, as much as though they were in his stable or pasture.   Nor can it make any difference that they have gone five or ten miles from their ordinary range. The owner is as entirely ignorant of their precise position in

the former as in the latter case; and the fact that they are branded or not with the owner's name is perfectly immaterial. It is sufficient for the person who comes across them to know that they are not his property; and if he drives them off and converts them feloniously to his own use, he is as much guilty of larceny, when he is ignorant of their true owner and their owner is ignorant of where they are, as he would be if both he and the owner had full knowledge on both these points." *State* v. *Martin*, 28 Mo. 530, 537.

According to the law as correctly stated in the cases above cited, upon the facts sustainable by the evidence the defendants Mafong and Kealoha committed the offense of larceny as charged.

Exceptions were separately taken to the denial of the defendants' challenges for cause of eleven of the jurors, only five of whom, however, sat at the trial, the defendants peremptorily challenging the other six.

It is unnecessary to say whether the objection was not waived in respect of the six jurors peremptorily challenged on the ground that the right of peremptory challenge had been abridged (*Burt* v. *Panjaud*, 99 U. S. 181), or that "the accused cannot complain if he is still tried by an impartial jury (*Hayes* v. *Missouri*, 120 U. S. 68, 71), since the same objections were made to all of the eleven jurors, being that they, as employees of the Hawaiian Commercial & Sugar Co. and other corporations under Mr. H. P. Baldwin, had received favors from him and wished to retain his good will and that their relations with him and his interests disqualified them from being fair and impartial jurors. He, as defendants say, "Being a good man, a lovable man, and one who treats his employees humanely, they naturally feel kindly to him; naturally feel that they should be loyal to his interests, and naturally desire to retain his good will. Now to put men so related to him in a business way on the jury where he, either individually, or as the chief official of a corporation is prosecuting, is to place a juror in a position

where his own personal interests are involved; and, that is not right to the defendant."

Besides the general qualifications of a juror prescribed by statute (Sec. 1770 R. L.), namely, citizenship, age, residence, voting qualifications, intelligence and ability to speak, read and write understandingly the English language, Act 5 S. L. 1905, requires that " if the court finds that the juror does not stand indifferent in the case" by reason of relationship to either party, "any interest in the cause," or by having "formed or expressed an opinion," or being "sensible of any bias or prejudice therein," another juror "shall be called in his stead."

The employment of jurors in Baldwin's corporations, their friendly and even intimate relations with him, his frequent acts of kindness to them and their desire to retain his good will do not in law disqualify them as jurors in this case, although all these facts are of more or less convincing nature in determining whether they stood "indifferent in the case," this being a fact which the trial judge is required to find upon all the evidence before him on the subject. As well stated in *Chesapeake & O. Ry. Co.* v. *Smith*, 103 Va. 326, 49 S. E. 487, "There are certain relations in life from which the law conclusively presumes bias, such as affinity or consanguinity within certain degrees," although he may be free from all bias, while there are other relations "upon which the law raises no presumption of bias, yet if upon his examination it appears that the juror is not impartial the law excludes him."

Juror F. A. Alexander testified in his examination that he had heard "some discussion of the case; just gossip; general talk;" that he thought he had unconsciously formed an opinion as to the guilt or innocence of the defendants from what he had heard; not a very fixed opinion but a sort of leaning that way; that he was not quite positive that he could set aside that opinion entirely and not permit it to affect his deliberations as a juror; that unconsciously he would not be as good and fair a

juror to try the case as if he had not heard anything of it; that he does not feel that he is competent to render a verdict; that his opinion was not unqualified but a qualified one; and on cross-examination he testified: "I have at this time a slight opinion as to the guilt or innocence of the defendants; "I got that opinion from talking with people; I talked with people who lived in the neighborhood,"—just general conversation, "if the evidence shows the facts as they have been related to me I guess my opinion would remain the same as it is now; * * * I am not quite so free from prejudice or bias for or against the parties to this action as if I had never.heard anything about the case; I think that unconsciously I have a tendency to lean to one side of the case in my present state of mind; I feel that way now."

The defendants then challenged the juror for bias. When the court interrogated him, he testified: "My opinion is not a fixed opinion, but it would tend to make me weigh one side a little heavier than the other. Having this impression I could not receive the evidence and give it the same weight as a juror; it depends upon the truth or falsity of what I have heard. If what I have heard is shown by the evidence to be not true I would change my opinion. If what I have heard is shown by the evidence to be not true I don't think I have a fixed opinion. * * * It would be subject to the evidence given on both sides." And in reply to the question, "If the facts should turn out as they have been related to you, the opinion which you now have would remain—you would be of the same opinion," he said, "I could not tell until that came to pass."

In many jurisdictions the juror would have been held to be disqualified but we are not in favor of treating the trial judge's findings on the subject of a juror's impartiality as erroneous unless the error is clear. "A great deal of regard is to be paid by the court to the discretion of the presiding judge" with whom it is usual "to inquire of a juror who may be objected to

whether he has any bias which will prevent him from giving a fair verdict on the evidence." *King* v. *Ahlo,* 4 Haw. 301, 302. As said in the Virginia case cited, sustaining challenges for favor on slight grounds "tends to place the administration of justice in the hands of the most ignorant and least discriminating portion of the community by which the safety of the accused may be endangered and the proper administration of the laws put to hazard." There is everything in the appearance of a juror and his manner of answering questions put to him. This juror probably analyzed his mental operations with more precision than would be done by many persons and probably stated the attitude towards the case of a large portion of the community.

*Queen* v. *Leong Man,* 8 Haw. 340, held that "a juror to be impartial is not obliged to say that he will give equal credence to every witness." *Wise* v. *Tong Ong,* 16 Haw. 458, held that a juror was not disqualified whose acquaintance with the plaintiffs would "incline him in their favor" and "to give more credence to their testimony," but who would be "governed by the evidence." The court said (p. 461), "A juror's tone and manner would have much to do with indicating whether he had personal feeling for or against the parties, hence it is proper to leave considerable discretion to the trial judge in passing upon the qualifications of jurors in respect of bias or prejudice." In *Territory* v. *Johnson,* 16 Haw. 743, 753, a juror had an opinion which "would probably unconsciously influence him; he did not think he would start out with an unbiased mind," but would decide the case according to the law and the evidence. Another juror had an opinion "which it would take evidence to remove" but who would decide the case solely upon the evidence. The court said, "It is not sufficient to disqualify a juror that he has formed an opinion which it would take evidence to remove. The question is rather whether he could give the defendant a fair and impartial trial upon the law and the evidence."

It is not merely what a juror says concerning his attitude to a case which influences the finding for he may be either oversensitive or desirous to evade sitting on the jury; it is the impression for fairness or unfairness which he makes upon the trial judge.

We are not prepared to say that the judge was in error in finding that this juror was not disqualified by bias from giving a verdict impartially after hearing the evidence.

W. A. Sparks, store manager for the Hawaiian Commercial & Sugar Co., of which he understood that Baldwin was president, said he thought neither this fact nor the fact that Baldwin was president of the Ranch Co. would influence him one way or the other and that if the evidence should be so nearly equal that he would be in doubt what the verdict should be he would not be influenced thereby. Montcastle, freight agent for the Kahului R. R. Co., and E. W. Russell, clerk in the Hawaiian Commercial & Sugar Co.'s store, who did not know who was the president of the Haleakala Ranch, were challenged for cause and objections to them being overruled they were peremptorily challenged. R. H. Anderson was peremptorily challenged after the objection to him was overruled, he having testified that his mind was free from bias or prejudice against either party. H. E. Cook, pump engineer of the Hawaiian Commercial & Sugar Co., testified that the fact that Baldwin was president of the Ranch Co. would not cause him to lean one way or the other in arriving at a verdict; that he would be perfectly free to act one way or the other; absolutely free from influence by reason of his relations with Baldwin, and would have no fear of consequences to himself whether the verdict went one way or the other. Objection to him being overruled he was peremptorily challenged. E. K. Cockett, a blacksmith for the same company, testified that he was not biased or prejudiced against the defendants; was on friendly terms with Baldwin and desired to remain so, but this would not influence him one way or the

other if under the evidence and instructions it was doubtful what the verdict should be. Objection to him being overruled he was peremptorily challenged. Juror J. K. Taylor, a mechanic for the same company, on friendly relations with Baldwin which he desired to retain, had no bias or prejudice or fear of consequences to himself from a verdict of guilty or acquittal; would not be influenced by his relations with Baldwin or employment by him if in doubt what the verdict should be. The challenge to the juror was overruled and he sat in the case. Juror Kaaloa was objected to on the ground that he could not understandingly read, write or speak the English language and had testified that he was not friendly towards the defendants but unfriendly. The juror apparently meant by unfriendly the absence of friendship. He testified that he would give his verdict independently and do what was right. It must be admitted that he did not pass a good examination in English, not knowing the meaning of "impartial," "bias," "prejudice," or of "weight" in the expression "weight of evidence," of "testimony" or "obligation." He took and read two English newspapers; understood "common language except hard words;" learned "easy" English at school; if the testimony was in common English he thought he would be able to understand it. The court, after examining him, said, "I must state that this is a peculiar case to me. This young man seems to understand English, talks very well, reads very well, but when it comes to the meaning of common words he does not seem to understand." We think the objection to him was correctly overruled. For practical purposes one may understand the language he talks, reads and writes, and yet be unable to define or explain the meaning of the words which he uses. There are many high school graduates, to go no higher, who would not define such words as "hard," "round," "easy," "doubt," and when it comes to "reasonable doubt," "obligation," "weight of evidence," "prejudice," elaborate essays are required to define their meaning to the

satisfaction of trained lawyers.   The fact is that educated and uneducated alike often "catch on" to the sense of an alien language "understandingly" although not at home in it.   There is no fixed or workable criterion of the amount and kind of knowledge of English required of jurors other than is furnished by the juror's general way of talking.   All the objections to jurors, including Kuikahi who was peremptorily challenged, were correctly overruled.

The exceptions to refusal of the defendants' motion to exclude all witnesses from the court room out of hearing of the witness on the stand, including von Tempsky, manager of the ranch; to overruling objections to certain leading and suggestive questions or to strike out the evidence of the witness Morton on rebuttal on the ground that it was not rebutting evidence, are not sustained.   It is the practice here to allow a person representing the interests of the prosecution to sit during the trial with the prosecuting officer.   The questions were objectionable and the evidence in rebuttal does not appear to have been rebutting evidence.   But these considerations are not sufficient to justify setting aside the verdict.

Before taking up the exceptions to the charge we give it in full, the instructions given at the request of the prosecution being marked in Roman numerals, those given at the defendants' request in Arabic, and instructions not requested by either side being marked alphabetically; the instructions or portions of instructions asked by defendants, which were not given, as well as the additions made thereto by the court being in parentheses.

"I.   The defendants herein stand indicted for the crime of Larceny in the First Degree, in that they did, at Kula, in the District of Makawao, in the Island of Maui, within this Circuit on the 7th day of March 1909 unlawfully and feloniously steal, take and carry away certain cattle, seven in number, of the aggregate value of One Hundred ($100.00) Dollars, said cattle being the property of the Haleakala Ranch Company, an Ha-

waiian corporation, and that said cattle were not then and there derelict,—that is to say, had not been, and were not then abandoned by their owner."

"II.  I instruct you that larceny or theft is the felonious taking of anything of marketable, salable, assignable or available value, belonging to or being the property of another.

"Therefore, in order to convict the defendants or any of them, it must be proven to the satisfaction of the jury and beyond a reasonable doubt that such defendant or defendants did in fact knowingly and with design to steal, and appropriate the cattle in question to his or their own use and benefit, assume the corporal custody and possession of such cattle, to the exclusion of the corporal possession thereof by the owner of the cattle, and with the intent to deprive such owner of such cattle."

"III.  You are instructed that if the defendants or one or more of them obtained actual bodily possession and control of said cattle at different times shortly prior to date laid in the indictment:—that is, some of them at one such time and some of them at another such time until all seven were collected, and that they, acting jointly, were on the date alleged holding said cattle or aiding in so holding and concealing said cattle, that these defendants may be guilty as charged although you should find that the said cattle were so wrongfully taken at different times shortly prior to the date charged."

"IV.  I instruct you that the indictment charges Larceny in the First Degree, that is, the larceny of property of the value of more than Fifty ($50.00) Dollars.

"Therefore, in order to find any one or more of the defendants guilty as charged, the Jury must be satisfied by the evidence, beyond a reasonable doubt that such one or more of defendants committed larceny of said cattle of an aggregate value of more than Fifty ($50.00) Dollars.

"If you find that such larceny was committed by the defendants or any of them, but that the value of the cattle so stolen by them or any of them, did not exceed Fifty ($50.00) Dollars, then you should convict such defendant or defendants as you shall believe, beyond a reasonable doubt to have committed such larceny, of Larceny in the Second Degree instead of in the First Degree as charged.  To make this point still more clear, you are instructed that larceny of property up to, but

not exceeding the value of Fifty ($50.00) Dollars is Larceny in the Second Degree, while larceny of property exceeding Fifty ($50.00) Dollars in value, is Larceny in the First Degree."

"V.   If the Jury believe from the evidence that the cattle in question had been stolen from Haleakala Ranch Company, and were recently after being so stolen found in the possession of the defendants or of any of them, then such possession would be what the law regards as a guilty circumstance, tending, if unexplained, to prove the guilt of the defendant or defendants so having such possession, and a circumstance which, taken in connection with other testimony, is to determine the question of guilt."

"VI.   You are charged that each and all of defendants may be guilty of said larceny if they all worked together to the end and for the purpose to wrongfully deprive the said owner of said property, and to convert same to their own use and benefit. In this case, one defendant may have done one act and another defendant another act and so no two of them may have done the same act and yet if they all or a part of them contributed knowingly and feloniously to the general result and proposed effect of thus obtaining said stock and depriving the owner of it, then they may all be guilty or such of them be guilty as so united in such plan, purpose and effect."

"A (VII).   You are further instructed that although the four defendants are charged and prosecuted jointly under the indictment herein, yet no defendant should be convicted unless the Jury believe, from the evidence, and beyond a reasonable doubt, that such defendant is guilty of the larceny charged in the indictment, either in the first degree or in the second degree. Thus, the Jury should carefully consider and apply to each of the defendants all of the testimony which has been received. And if one or more of the defendants, less than the whole, shall in the opinion of the Jury have been proven guilty, beyond a reasonable doubt, such one or more of them should be convicted, and such one or more of them as have not, in the opinion of the Jury, been proven guilty beyond a reasonable doubt, should be acquitted."

"B (VIII).   The Jury are instructed that the doubt which will entitle defendants or any of them, to an acquittal must be a reasonable doubt, not a conjured-up doubt, such a doubt as

Territory v. Robello, 20 Haw. 7.

you might conjure up to acquit a friend, but a doubt that you could give a reason for.

"A reasonable doubt is not a possible doubt, not a conjectural doubt, not an imaginary doubt, not a doubt of the absolute certainty of the guilt of the accused, because everything relating to human affairs and depending upon moral evidence is open to conjectural or imaginary doubt, and because absolute certainty is not required by law. The real question is whether after hearing the evidence and from the evidence you have or not an abiding belief that defendants are guilty and if you have such belief so formed, it is your duty to convict. You should take all the testimony and all the circumstances into account and act as you have an abiding belief the fact is."

"C (IX). You are instructed that the Court gives instructions to you for the purpose of giving you the law and not for the purpose of indicating the mind or state of mind of the Court.

"With the opinion of the Court as to matters of fact, you are not concerned and should not try to discover. You are to follow the charge of the Court only as matter of law.

"The Court for example gives you the usual charges as to burden of proof, as to presumption of innocence and as to reasonable doubt, but gives these not to indicate doubt in the mind of the Court, but to guide you as to your duty, if under the evidence you yourselves have a reasonable doubt.

"The Court does not intend to convey to you the opinion of the Court as to what the evidence shows and with the opinion of the Court as to the facts you have nothing to do.

"If Counsel state their opinion, you may consider that they, in their zeal have gone too far, you may disregard their opinions, but you should carefully weigh their arguments so far as their arguments are based on the proven facts and the law as given you by the Court.

"Gentlemen, take a plain common sense view of the matter and decide as the truth of the matter appears to your own minds. Your duty is plain notwithstanding the long arguments and notwithstanding these long and complicated instructions on points of law, the application of which is in some cases doubtful.

"In fact you are free to decide the question of the guilt or

innocence of these defendants with unfettered and unclouded minds and as you think the fact is."

"D.  You are the sole judges of the weight of the evidence and of the credibility of the witnesses and if you believe from all the evidence and all the circumstances that any witness has testified knowingly falsely then you are entitled or at liberty to reject all the testimony of such untruthful witness unless it is corroborated by other proven facts and circumstances which show it probably true.

"The uncorroborated testimony of a witness who has testified falsely knowingly is of little or no weight."

"E.  The credibility of the witnesses and the weight of the testimony are questions of fact for the jury.

"The Court instructs the jury, that the credibility of the witnesses is a question exclusively for the jury; and the law is, that where a number of witnesses testify directly opposite to each other, the jury are not bound to regard the weight of the evidence as evenly balanced.  The jury have a right to determine from the appearance of the witnesses on the stand, their manner of testifying, their apparent candor and fairness, their apparent intelligence or lack of intelligence, and from all the other surrounding circumstances appearing on the trial, which witnesses are the more worthy of credit, and to give credit accordingly.

"And you should take into consideration the interest in the case which the witness has, consider what temptation he may have to tell a falsehood, and consider his apparent character and candor.  Uncontradicted evidence of a witness who is very much interested in the outcome of the case may be very little entitled to weigh much unless corroborated by facts, circumstances or other credible evidence."

"F.  You have a plain sacred duty to perform.  It is your duty to act as you think you should under the evidence and the law given by the Court, you not to be bothered or mystified by the many and long and complicated instructions given by the Court which may be not fully understood by you for the main question for you to decide is one of fact and the proven facts must in the main control your action.  Do not take the opinion zealous counsel or of this Court and do not think you know what opinion the Court holds, you alone are to decide and must act by and according to your own honest firm belief."

Territory v. Robello, 20 Haw. 7.

"G. Each must act according to his own conscience but his conscience may properly compel him to act as one of a deliberative body and so consult with each other and reason together and act as reasonable men reasoning together as to what the facts in evidence prove to a moral certainty if such proof exist in your minds. Do not fear to do your duty as you understand it. Consult together and act as you each and all believe is right.

"Heretofore you have been advised not to discuss the case with each other, but now when the case is submitted to you for your verdict I say to you discuss the matter and advise together and after full consideration act."

"No. 1. The jury are instructed the burden of proof rests upon the prosecution to prove to the satisfaction of the jury beyond reasonable doubt each and every material allegation of the indictment, and, unless that has been done, the jury should find the defendants not guilty."

"No. 2. The law presumes the defendants in this case innocent of the charge against them, and this presumption continues until the guilt of the defendants is established by the evidence beyond a reasonable doubt. This presumption of innocence is not a mere form to be disregarded by the jury at pleasure; it is an essential, substantial part of the law of the land, and binding on the jury in this case; and it is the duty of the jury to give to the defendants in this case the full benefit of this presumption and to acquit the defendants in this case unless their guilt is established by the evidence in this case beyond a reasonable doubt."

"No 3. A reasonable doubt is that state of mind which, after a full comparison and consideration of all the evidence both for the prosecution and for the defendants, leaves the minds of the jurors in that condition that they cannot say that they feel an abiding faith amounting to a moral certainty from the evidence in the case, that the defendants are guilty of the charge laid in the indictment. If you have such a doubt you must acquit the defendants." (The court refused to give: "If there is one single fact proven to the satisfaction of the jury by the evidence, which is inconsistent with the guilt of the defendants, this is sufficient to raise a reasonable doubt, and the jury should acquit the defendants.")

"No. 4. The Jury are instructed that the indictment in any case is, of itself, a mere accusation or charge against the defendant, and is not, of itself, any evidence of defendant's guilt; and no juror should, in this case, permit himself to be influenced to any extent against the defendants, or either of them, because or on account of the indictment in this case."

(Refused. "No. 5. Each individual juror must, under the obligation of his oath, find for himself, from the evidence in this case, beyond a reasonable doubt, each and every material fact alleged in the indictment before he can find the defendant guilty; and, no juror should agree to a verdict of guilty if his conscience and best opinion, based upon the evidence in the case, induces him to disbelieve the existence of any material fact alleged in said indictment, or, if upon the whole evidence, he entertains a reasonable doubt of the guilt of the defendants, notwithstanding the opinion of other jurors.")

"No. 6. Statements made by one defendant after the alleged crime, if such crime was committed, in the absence of other defendants, is not evidence against such absent defendants, and must not be considered by the jury against such absent defendants, as such statements are hearsay and not competent evidence against such absent defendants;" (adding: "But so far as such evidence explains acts taken in conjunction with all the circumstances in this case, it may be so connected with other facts in evidence as to explain generally the plan or purpose of persons who are not present.")

"No. 7. The indictment in this case charges the defendants jointly with having stolen seven head of cattle of the value of one hundred dollars the property of the Haleakala Ranch Company, and that such cattle are not derelict. I charge you that the value of said cattle being alleged in the indictment collectively, that the Territory must prove beyond a reasonable doubt that all of said cattle were, at the time of the stealing thereof, if you find that the same were stolen, were the property of the Haleakala Ranch Company, and that all of said cattle were stolen by the defendants before you can find the defendants guilty; in other words you cannot find the defendants guilty in this case unless you find that they stole all of said cattle."

"No. 8. Under the laws of this Territory 'all cattle * * * over twelve months of age, not marked or branded according

to law, and which may have been running wild and at large for six months or over, upon any lands of this Territory, shall belong to and be the property of the owners or lessees of the lands on which the said animals may be found running.' Therefore, if you find from the evidence that the cattle mentioned in the indictment were taken by the defendants or either of them, but further find that such cattle or any of them were not marked or branded, and such cattle or any of them were over the age of twelve months, and had been running wild and at large upon any of the lands of this Territory for six months or over, when so taken, and were at the time taken upon any lands leased or owned by the defendants or either of the defendants, you must find the defendants not guilty as charged in the indictment;" (adding: "If the evidence is conflicting as to ages or as to time the cattle were at large, you are the judges as to the credibility of the witnesses and as to what facts are proven.")

"No. 9. The word derelict means abandoned or deserted. You must not only believe from the evidence in this case beyond a reasonable doubt that the cattle and all of them mentioned in the indictment are owned by the Haleakala Ranch Company, as alleged in the indictment, but you must further believe from the evidence beyond a reasonable doubt that the same had not been abandoned by such owner prior to the alleged theft of said cattle and all of them, if you find that said cattle and all of them were stolen, otherwise you must acquit the defendants."

"No. 10. Gentlemen of the Jury, you cannot find any of the defendants guilty as charged in the indictment unless you find from the evidence in this case, beyond a reasonable doubt, that such defendant or defendants took (or got possession of) all of the seven head of cattle named in the indictment from the control or care of the Haleakala Ranch Company feloniously intending at the time of taking (or getting possession of) such cattle, if same were taken (or obtained possession of,) to steal the same."

"No. 11. If you find from the evidence that the defendants, or any of the defendants took or got possession of said seven head of cattle mentioned in the indictment from the possession or control of the Haleakala Ranch Company, but further find that such defendant or defendants took the said seven head of

cattle under the belief that he, or they, had the right so to do, it is your duty to find such defendant or defendants not guilty, although you may believe from the evidence, beyond a reasonable doubt that such defendant, or defendants, was or were mistaken as to his or their right to take such cattle;" (adding: "And you must judge of the motives of defendants from their acts and from all the proven facts of this case. The acts and circumstances speak the motive of the heart and mind.")

"No. 12. You cannot find either of the defendants guilty as charged in the indictment upon evidence showing that such defendant received such cattle after they were stolen from the Haleakala Ranch Company, if they were so stolen, unless you further find from the evidence, beyond a reasonable doubt, that such defendant participated in the original taking of such cattle and all of said cattle;" (adding: "But if some of defendants feloniously got possession of said cattle with intent to steal the same and did this under a joint plan and purpose of all or of others of defendants who also did other acts to aid in the same said acts and if you find the said cattle were so stolen by various acts of different defendants acting with one common intent and purpose in order to effect the obtaining of said cattle for their own use and benefit and to deprive the owner of the use, benefit and value of the cattle and also find that the owner was the Haleakala Ranch Company was the owner, then you must find that all so cooperating to such common end and purpose are equally guilty.")

"No. 13. Receiving stolen property, fraudulently or with knowledge at the time of receiving it that it has been stolen is a crime separate and distinct from the crime of larceny charged in the indictment in this case. Therefore, you cannot, under the indictment in this case, find any of the defendants guilty upon evidence proving or tending to prove that such defendant after the said seven head of cattle had been stolen, if same were stolen, received the same knowing that such cattle had been stolen;" (adding: "unless you also find that defendants as to all the matter acted jointly and with a common purpose to get and keep said cattle for their own benefit and to deprive the owner of the same.")

"No. 14. If you find from the evidence that the defendant, Frank Robello, did not participate in the original taking or get-

ting possession of the said seven head of cattle, mentioned in the indictment, if same were stolen, but did receive the same from other of the defendants, you must find the defendant Frank Robello not guilty;" (adding: "unless you also find that said Robello did enter into the plan and purpose of such original taking or getting possession of said cattle, knowing the same to be taken wrongfully, feloniously and for the purpose of depriving the owner of the said cattle.")

"No. 15. If you believe from the evidence in this case that the defendant Frank M. Pires did not participate in the original taking or getting possession of the seven head of cattle mentioned in the indictment, and all of them, you must acquit him, although you may believe from the evidence that he after said cattle were taken or obtained possession of, (if same were taken,) claimed the same under purchase or bargain of sale from other of the defendants;" (adding: "and if you find he had purchased the same in good faith and had not entered into the general plan, if one there was of stealing stock if they were stolen.")

The objections urged to those portions of the charge to which exceptions, fifteen in number, were taken, may be summarized as follows: (1) Instruction III omits the essential fact that to constitute larceny wrongful possession must have been obtained with felonious intent, since the jury, separating this from the other instructions, could base a conviction thereon which would not be good in law; (2) instruction IV omits to confine the value of the property to the time of the stealing, the defendants' evidence showing that they took the calves when famishing and of little value; (3) instruction VI also omits the requirement of felonious intent of depriving the owner of property and is inapplicable to the defendants Robello and Pires, there being no evidence to connect them with the stealing; (4) instruction B seeks "to explain away the rule of reasonable doubt," allowing the jury to convict upon "an abiding belief that defendants are guilty," making the rule of reasonable doubt "a delusion and a snare;" (5) instruction C is unnecessary, draws the instructions out to great length "tending to con-

fuse the minds of the jurors" and discredits the instructions given by saying that their application "is in some cases doubtful," thereby "lessening the confidence of the jury in the law as given by the court and in effect informing them to decide as they desire regardless of the instructions;" (6) instruction E warns the jury to take with great caution the evidence of the defendants, to consider their temptations to "tell falsehoods," and seeks to discredit them; (7) instruction G urges a majority verdict and discourages independent judgment of jurors, informing them "that if they are satisfied to a moral certainty, regardless of reasonable doubt, they might find the defendants guilty." (8) The refusal to instruct in instruction 3 that if there is a single fact proved which is inconsistent with the defendants' guilt it is enough to raise reasonable doubt and require acquittal was as much as telling the jury to convict although it had a reasonable doubt of material facts. (9) The defendants were entitled to instruction 5 since "no juror has a right to violate his oath and his own opinion based upon the evidence and agree to a verdict because seven or more of his fellow jurymen agree to it." (10) The addition to instruction 8 singles out a special feature unnecessarily and minimizes the instruction asked which was in accord with Sec. 422 R. L. and should have been given unmodified. Adding the words about possession left the jury to believe that receiving stolen cattle is larceny and their possession enough to show guilt. The wrong instruction was not cured by a correct one. *Territory* v. *Richardson,* 17 Haw. 231. (11) Modification of instruction 11 was unnecessary, repeats principles otherwise presented and allows the jury to believe that while possession in the belief of right would require acquittal yet the motives might be inferred from other evidence and justify conviction. (12) The addition to instruction 12 presumes a joint plan not shown by the evidence, and so of instructions 13, 14 and 15.

In reviewing the charge it does not seem to us that failure

to state whenever "taking" or "getting possession" is mentioned, that it must be with· felonious intent, could mislead the jury. It was held in *Sylva* v. *Wailuku Sugar Co.,* 19 Haw. 602, 608, that a certain instruction, if erroneous, was substantially cured by other instructions. The opinion upon rehearing of the case, Ib. 682, suggests "that this states the rule about conflicting instructions in broader language than can be reconciled with the ruling in *Territory* v. *Richardson,*" 17 Haw. 231, 236. That case was a series of instructions applicable to an action for money had and received but not to an indictment for embezzlement, and as the jury was not told to treat them as modified by correct instructions afterwards given the verdict was set aside. If. however, a charge contains references to the offense which omit an essential ingredient of it but evidently refer to statements which fully define the offense in unmistakable terms then it may appear, as it does in this case, that the jury could not have been misled thereby. The court repeatedly instructed the jury upon the facts to be found to constitute larceny in language which could not be misunderstood. The "possession," mentioned in instruction III. could have been no other than was referred to in instruction II. In referring to the offense it is unnecessary always to restate its time and place. The larceny was charged to have been committed March 7, 1909, and it was unnecessary each time it was mentioned to repeat its date, or in instruction IV to say that the value of the cattle must be confined to the time of stealing. It is immaterial to Robello and Pires that instruction VI was inapplicable to them for we hold that the evidence does not justify their conviction. There is no objection to the explanation of "reasonable doubt" (*King* v. *Ahop,* 7 Haw. 556, 560, 561; *Republic* v. *Yamane,* 12 Haw. 189, 215), or to instruction C which appears to have been intended to keep the jury from accepting the judge's impression as to the defendants' guilt. Instruction 1 sufficiently covers the portion of instruction 3 refused and in-

struction 5 is sufficiently covered by various instructions given. The addition to instruction 8 does not attach undue importance to the age of the calves. *Republic* v. *Ah Ping,* 10 Haw. 459, 461. The reference to possession in instruction 10 would not mislead the jury. Instruction 11 properly refers to motives. The objections in instructions 12, 13, 14 and 15 to references to a joint plan are not prejudicial to the defendants Robello and Pires and are applicable to the defendants Mafong and Kealoha.

We see nothing in the charge which is erroneously prejudicial to the defendants Mafong and Kealoha. If it contains remarks equivalent to "comment upon the character, quality, strength, weakness or credibility of any evidence," or "upon the character, attitude, appearance, motive or reliability of any witness (prohibited by Sec. 1798 R. L.), they do not justify setting aside the verdict. See *In re Notley Will,* 15 Haw. 701; *Territory* v. *Schilling,* 17 Haw. 264; *Brown* v. *Spreckels,* 18 Haw. 113.

Exceptions of Mafong and Kealoha overruled; those of defendants Robello and Pires sustained, verdict and judgments against them being set aside and vacated and as to them new trial granted.

*Lorrin Andrews, Deputy Attorney General,* for the Territory.

*Atkinson & Quarles* for defendants.